RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0460p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CITY OF CLEVELAND,

      *Plaintiff-Appellant,*

    *v.*

No. 06-3611

STATE OF OHIO; OHIO DEPARTMENT OF
TRANSPORTATION,
    *Defendants and Third Party Plaintiffs-Appellees,*

    *v.*

FEDERAL HIGHWAY ADMINISTRATION,
        *Third Party Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00805—Gregory L. Frost, District Judge.

Argued: April 18, 2007

Decided and Filed: November 21, 2007

Before: MERRITT and GRIFFIN, Circuit Judges; LAWSON, District Judge.[*]

---

## COUNSEL

**ARGUED:** Pierre H. Bergeron, SQUIRE, SANDERS & DEMPSEY, Cincinnati, Ohio, for Appellant. John J. Stark, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellees. **ON BRIEF:** Pierre H. Bergeron, Ryan D. Walters, SQUIRE, SANDERS & DEMPSEY, Cincinnati, Ohio, for Appellant. John J. Stark, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellees.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

DAVID M. LAWSON, District Judge.  The City of Cleveland, Ohio (the City) challenges a final decision by the Federal Highway Administration (FHWA) to withdraw federal funds from a public works project initiated by the City that was intended to improve the aesthetic appearance of a local thoroughfare.  At the base of this dispute is a local ordinance known as the Lewis Law, which mandates that contractors employing Ohio workers on public projects for the City ensure that at least twenty percent of the work on that project is performed by Cleveland residents, and provides that contractors who violate the requirement must post a substantial bond as a condition of receiving subsequent contracts with the City.  The City included Lewis Law compliance as a requirement in its bid specifications but later withdrew that requirement when told to do so by the Ohio Department of Transportation.  However, the requirement reappeared in the contract signed by the successful bidder. The FHWA determined that inclusion of the Lewis Law's local hiring preference in the contract violated certain federal requirements pertaining to competitive bidding and non-discriminatory hiring, and therefore it withdrew federal funding that previously had been approved for the project.  The district court rejected the City's challenge to the FHWA's decision brought under the Administrative Procedures Act on the grounds that the City's local hiring preference requirement frustrated 23 U.S.C. § 112's goal of limiting anti-competitive bidding provisions and procedures, and violated 23 C.F.R. § 635.117(b) by authorizing geographically-based discrimination.  The lower court also held that the ordinance's enforcement mechanism violated 23 C.F.R. § 635.110(b) because the Lewis Law's bond penalty for noncompliance could restrict competition by deterring some contractors from bidding on City construction projects.  Although we disagree with the district court's conclusion that the substance of the Lewis Law itself runs afoul of 23 U.S.C. § 112(b) and some of the regulations cited by the FHWA, we affirm the district court's judgment because withdrawal of the funds was authorized under the discretion conferred on the FHWA and by 23 U.S.C. § 112(b), which outlaws contract "requirement[s] or obligation[s]" that are not "specifically set forth in the advertised specifications."  23 U.S.C. § 112(b)(1).  We also find that the FHWA acted reasonably in determining that the Lewis Law's bond penalty provision violated 23 C.F.R. § 635.110(b).

I.

The source of the dispute in this case is a City construction project aimed at improving the streetscape of Kinsman Road in Cleveland, Ohio.  The City obtained most of the funds necessary to complete this project through the Federal-Aid Highway Program (the Highway Program), which is based on the Federal-Aid Highway Act (the Highway Act), 23 U.S.C. § 101, *et seq.*, and administered by the FHWA, 49 U.S.C. § 104; 49 C.F.R. § 1.48(b).  The FHWA is an agency within the United States Department of Transportation.  49 U.S.C. § 104(a).

The Highway Program provides States with financial assistance for a variety of transportation-related construction projects.  Under the Highway Program, States retain their "sovereign rights . . . to determine which projects shall be federally financed."  23 U.S.C. § 145(a).  States are eligible to receive funding if they have a state transportation department capable of carrying out the duties required by the Program.  23 U.S.C. § 302.  Because Ohio maintains the Ohio Department of Transportation (ODOT), it meets this requirement.  *See* Ohio Rev. Code § 5501.03.

To avail itself of federal funding and delineate the division of responsibilities between itself and the FHWA, ODOT entered into a "Memorandum of Agreement" with the FHWA Ohio Division Office on April 9, 2002.  Although the Agreement delegates a great deal of responsibility to ODOT, it states that "the FHWA ultimately is accountable for ensuring that the Federal-aid Highway

Program is delivered consistent with established requirements." JA at 278. Pursuant to the Agreement and relevant statutes and regulations, the FHWA provided ODOT with funding, guidance, and technical assistance. ODOT may in turn delegate primary responsibility for the administration of local projects to "local public agencies" (LPAs), such as the City. 23 C.F.R. § 635.105. This delegation, however, does not relieve ODOT of its responsibility to ensure that all projects under its purview are completed in accordance with federal and state law. 23 C.F.R. § 635.105(a).

On December 4, 2002, the City passed an ordinance authorizing the Directors of Public Service to apply to ODOT for a grant of federal Highway Project funds pertaining to the City's planned improvements of the Kinsman Road streetscape. Cleveland, Ohio, Ordinance 1530-02 (Dec. 4, 2002). The project was to encompass the area from East 130th Street to the City's corporation line and contemplated constructing a brick sidewalk, planting trees, and installing pedestrian light poles.

In early December 2003, the City entered into an "LPA Federal Project Agreement" with ODOT whereby ODOT delegated primary responsibility to the City for administration of the Kinsman Road project. ODOT agreed to provide eighty percent of the funding for the project from monies made available by the FHWA, up to a maximum of $696,000. The City agreed to furnish the remaining funds. The project had an estimated cost of $870,000.

On December 23, 2003, the City sent ODOT a copy of the proposed bid package for the Kinsman Road project. The bid package indicated that the selected contractor would be subject to Cleveland's Lewis Law. That law, enacted on June 10, 2003 and formally known as the Fannie M. Lewis Cleveland Resident Employment Law, was passed in order "to alleviate the lack of use of Residents on City of Cleveland construction projects found to exist by the Council of the City of Cleveland." Cleveland, Ohio Codified Ordinances § 188.07. The Lewis Law provides:

> Where not otherwise prohibited by federal, state or local law or the terms of federal or state grants, all Construction Contracts shall contain a provision that requires that Residents of the City perform twenty percent (20%) of the total Construction Worker Hours ("Resident Construction Worker Hours") and shall contain a provision detailing the penalties for failure to do so, which penalties are set forth in Section 188.05.

Cleveland, Ohio Codified Ordinances § 188.02(a).

In an apparent attempt to avoid conflict with the Privileges and Immunities Clause by restricting the reach of this ordinance to Ohio residents only, *see United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 215-23 (1984) (in which the Court evaluated a Camden, New Jersey ordinance mandating local hiring preferences on city projects and observed that "Camden may, without fear of violating the Commerce Clause, pressure private employers engaged in public works projects funded in whole or in part by the city to hire city residents. But that same exercise of power to bias the employment decisions of private contractors and subcontractors against out-of-state residents may be called to account under the Privileges and Immunities Clause"), the City tailored the definition of "Construction Worker Hours" to exclude hours worked by non-Ohio residents. Cleveland, Ohio Codified Ordinances § 188.01(c). Therefore, by comprising its workforce entirely of out-of-state residents, a contractor would not be subject to the Lewis Law's requirements. On the other hand, if a contractor wished to use *any* Ohio workers, twenty percent of those workers' (i.e., the Ohio residents') hours would have to be performed by Cleveland residents. Cleveland, Ohio Codified Ordinances §§ 188.01(c) and 188.02(a).

If a contractor fails to satisfy the Lewis Law's requirement, a fine is imposed corresponding to the degree of the shortfall. Cleveland, Ohio Codified Ordinances § 188.05(b). In addition, for a period of five years after a violation, the City may require the offending contractor to post a surety bond equal to twenty percent of the contract price for any future contract. Cleveland, Ohio Codified Ordinances § 188.05(h).

After reviewing the bid package that included the local hiring requirement, the LPA Coordinator for ODOT notified the Director of Public Service for the City by e-mail on February 3, 2004 that failure to remove the language referencing the Lewis Law would lead to the withdrawal of federal funds. ODOT sent the City a letter to this effect on February 6, 2004. Both correspondences cited 23 C.F.R. § 635.117(b) as the basis for their warnings. In response, the City altered the contract and bid specifications by crossing out the references to the Lewis Law. Bids were received on February 26, 2004, and the bid submitted by Perk Company, Inc. (Perk) was approved by the City as the lowest responsible bid.

Although the bid specifications made no reference to the Lewis Law, the contract subsequently executed between the City and Perk incorporated its requirements. When the FHWA learned of this development, it sent a letter on July 12, 2004 to the director of ODOT, informing him that the inclusion of the Lewis Law was in contravention of "federal regulations that prohibit the use of local hiring preferences" and the federal funds were being withdrawn as a result. JA at 180. On July 16, 2004, ODOT relayed this message to the City. The FHWA formally withdrew funding approval on August 3, 2004.

On March 26, 2004, prior to executing its contract with Perk, the City filed suit against the State of Ohio and ODOT in the Franklin County, Ohio Court of Common Pleas seeking a declaratory judgment establishing that application of the Lewis Law to the Kinsman Road project would not violate federal law or regulations as incorporated by the LPA Federal Project Agreement. The City also sought an injunction to enable the enforcement of the Lewis Law and to compel ODOT to pay the previously-committed federal funds.

On July 16, 2004, the State of Ohio and ODOT filed a third-party complaint against the FHWA, asserting that ODOT had notified the City of the Lewis Law's incompatibility with federal law "[a]t the direction of [the] FHWA." JA at 19. ODOT also declared that, "[a]s the agency responsible for administering the FHWA funding for the subject project, [it] is merely a stakeholder in this action." *Id.* at 20. Accordingly, it took "no position on whether FHWA's application of [federal law] to the Lewis Law is correct." *Ibid.*

On August 15, 2004, the FHWA removed the action to the United States District Court for the Southern District of Ohio. On November 30, 2004, the magistrate judge to whom the matter had been assigned directed the City and the FHWA to file cross-motions for summary judgment, and on January 13, 2006, the district court issued its opinion and order denying the City's motion and granting summary judgment in favor of the FHWA.

The district court concluded that the State of Ohio and ODOT had standing to bring their third-party claim against the FHWA; the court did not address the issue of the City's standing. Thereafter, the district court held that the FHWA did not act arbitrarily or capriciously in determining that the Lewis Law's local hiring provision violated 23 U.S.C. § 112 because the statute seeks to limit both anti-competitive bidding procedures and substantive provisions in federally-funded contracts. The court then found that the Lewis Law violated section 112(a) because its substantive local hiring mandate discouraged bidding by otherwise qualified contractors who may believe they would have difficulty complying with the local hiring preference. The district court also found that the Lewis Law did not satisfy the exception to the competitive bidding requirement

found in section 112(b) because it was not an alternative method that is more "cost effective" than typical competitive bidding.

In addressing the FHWA's arguments based on certain federal regulations, the district court held that the FHWA did not act arbitrarily or capriciously in determining that the Lewis Law violated 23 C.F.R. § 635.110(b), which prohibits the imposition of bonding requirements that might restrict competition. However, the court rejected the FHWA's contention that the Lewis Law contravenes 23 C.F.R. § 635.112(d), which outlaws contract requirements that could have the effect of discriminating against contractors on a geographical basis, because the court believed that section dealt with bidding procedures only. The court did find that the Lewis Law's requirements violated 23 C.F.R. § 635.117(b), which proscribes procedures or requirements that "operate to discriminate against the employment of labor from any other State, possession or territory of the United States, in the construction of a Federal-aid project." The court was unpersuaded by the City's argument that the Lewis Law only permits *intra*state discrimination against non-Cleveland residents.

Finally, the court rejected the City's argument that the "Common Rule," found in 49 C.F.R. Part 18, is the controlling regulation. That rule provides that States may spend federal funds using the same procurement rules applicable to expenditures of their own funds. The district court determined that the regulation requires ODOT to ensure that local governments abide by federal contracting requirements, and since the court had already determined that the Lewis Law violates some of those requirements, it held the City could not escape this result by appeal to the Common Rule.

After the district court filed its opinion, the non-federal parties filed a stipulation on February 10, 2006 agreeing that the Lewis Law does not violate state law and would not prohibit the use of state funds on the Kinsman Road project. On February 13, 2006, the court entered judgment in favor of the FHWA consistent with its opinion and the parties' stipulation. That same day, the City filed a motion to intervene as a plaintiff in the State of Ohio and ODOT's third-party complaint against the FHWA, ostensibly "to alleviate any concern that might exist as to [the City's] appellate standing." App.'s Br. at 3. The district court summarily denied this motion on February 16, 2006, reasoning that it had "already entered judgment in this case." JA at 151. Thereafter the City filed this appeal.

II.

As a threshold matter, the FHWA presents a cursory challenge to the City's standing to proceed against it. According to the FHWA, the City lacks standing because it was merely a subgrantee, i.e., the FHWA only gave approval of advance construction funding to ODOT, not the City. The FHWA does not specifically address the issue whether the City has standing to appeal, although the City contends in its brief that it does. The court will address both issues because it is "under an independent obligation to police [its] own jurisdiction." *S.E.C. v. Basic Energy & Affiliated Resources, Inc.*, 273 F.3d 657, 665 (6th Cir. 2001); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating that standing is a "threshold question in every federal case"); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (holding that standing is a jurisdictional requirement that cannot be waived and may be raised at any time in the proceeding).

We find that the City meets the three constitutional requirements for standing, *see McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 225-26 (2003) (reiterating that "the irreducible constitutional minimum of standing" consists of "an injury in fact, which is concrete, distinct and palpable, and actual or imminent," "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of some third party not before the court," and a "substantial likelihood that the requested relief will remedy the alleged injury in fact") (internal quotes and citations omitted), as well as the prudential

requirements, *see Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (reviewing the three elements that "a plaintiff must assert his own legal rights and interests," the claim "must be more than a generalized grievance," and "in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question") (internal quotes and citations omitted). The City has suffered an injury in fact because ODOT was forbidden by the FHWA from providing previously-committed federal funds for the Kinsman Road project on the basis of the FHWA's objection to the application of the Lewis Law, thereby resulting in an injury that is both "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). There also is a causal connection between the injury (the loss of project funding) and the FHWA's actions that would be redressable by a decision declaring that the Lewis Law's requirements would not contravene federal law, since the FHWA has identified no other problems with the Kinsman Road project.

In examining the first prudential element, we believe the FHWA's contention that its actions were directed at ODOT and not the City – and therefore the City is attempting to stand in for ODOT – elevates form over substance. The record demonstrates that ODOT viewed itself as little more than a conduit, and the City's goal is not to assert ODOT's interest in receiving federal funds, but its own. The City alleges an injury that is unique to itself and very specific – the denial of federal funding based on its attempt to apply an ordinance that favors the use of local labor – which satisfies the second prudential requirement. Finally, the City meets the third prudential requirement because the interest sought to be protected is "arguably" within the "zone of interests" regulated by the statute in question, 23 U.S.C. § 112. *See Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 914 (6th Cir. 2002).

The City's standing to appeal presents a closer question in a context not previously addressed by this court. "Standing may be a bar to an appeal even though a litigant had standing before the district court." *United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991). To have appellate standing, "'a party must be aggrieved by the judicial action from which it appeals.'" *Vogel v. City of Cincinnati*, 959 F.2d 594, 599 (6th Cir. 1992) (quoting *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 484 (6th Cir. 1985)). This court has held both that "Article III affords standing to non-parties for the purposes of appeal in some circumstances," *United States v. Perry*, 360 F.3d 519, 526 (6th Cir. 2004), and that "[p]ermission to intervene in a district court action does not automatically confer standing to appeal," *Asssoc. of Banks in Ins. v. Duryee*, 270 F.3d 397, 402 (6th Cir. 2001). However, we have not addressed the question of the appellate standing of a party that was denied formal intervention in the district court against a third-party defendant, where the appellant seeks to attack the judgment in favor of the third-party defendant.

We start from the general premise that a party seeking to appeal must be "aggrieved" by the judgment or order from which the appeal is taken. *See, e.g., Deposit Guarantee Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980); *Parr v. United States*, 351 U.S. 513, 516 (1956); *Vogel*, 959 F.2d at 599; *Vanguards*, 753 F.2d at 484. Applying this rule, the Second and Ninth Circuits have held that a litigant that is a party to the overall *case* may lack standing to appeal from a judgment that dismisses a *claim* to which it was not a party. *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 83 (2d Cir. 2005); *Bryant v. Technical Research Co.*, 654 F.2d 1337, 1343 (9th Cir. 1981). In those cases, however, the appellants were not personally aggrieved by the judgment under appeal and did not seek to protect their own interests. Although the present case parallels those decisions insofar as the parties are similarly aligned, the actual interests of the parties distinguish the decisions of our sister circuits and lead us to a different result.

We conclude that a rule conferring standing upon a plaintiff to challenge on appeal a decision in favor of a third-party defendant against whom the plaintiff had no direct claim in the lower court finds support in two lines of authority. The first, mentioned above, holds that non-parties have standing to appeal when they have a sufficient stake in the outcome of the case. *Bryant v. Yellen*,

447 U.S. 352, 368 (1980); *Perry*, 360 F.3d at 526. In *Bryant*, the Supreme Court held that a group of farm workers had standing to appeal despite the fact that they had only participated as *amici* in the district court action. The United States brought suit against the Imperial Irrigation District, a California irrigation agency, seeking a declaratory judgment that the Omnibus Adjustment Act of 1926 prohibited the supply of irrigation water to landowners owning more than 160 acres. If the United States had been successful, many landowners possessing lands in excess of this amount in all likelihood would have had to sell some of their land to retain their water rights. When the district court rejected its position, however, the United States chose not to appeal. The *amici* farm workers attempted to intervene for purposes of appeal (as they hoped to purchase the land that would have become available), but the district court denied their motion. The Ninth Circuit reversed the denial and held that the farm workers had standing to appeal. The Supreme Court agreed. Recognizing that the farm workers had an interest in seeing the United States's position vindicated, the Court held they "had a sufficient stake in the controversy to afford them standing to appeal." *Id.* at 368.

The City's position also finds support in several cases holding that appeals may be taken by non-parties who were treated on all sides as *de facto* parties but who never formally intervened. *See SEC v. Wencke*, 783 F.2d 829, 834-35 (9th Cir. 1986); *In re Grand Jury Proceedings, Subpoena to Vargas*, 723 F.2d 1461, 1464 (10th Cir. 1983); *Martin-Trigona v. Shiff*, 702 F.2d 380, 385-86 (2d Cir. 1983); *Beef Indus. Antritrust Litig.*, 589 F.2d 786, 788-89 (5th Cir. 1979); *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 602-03 (9th Cir. 1978). In this case, the City actually was a party to the *case*, and it was treated as a *de facto* party to the *claim*. We have little trouble concluding that the City had "a sufficient stake in the outcome of the controversy" as required by *Bryant v. Yellen*. 447 U.S. at 368. If it were not for the City, there would be no controversy in this case.

We recognize the general rule prohibiting a party who unsuccessfully filed a motion to intervene from appealing anything but the order denying intervention. *See In re Assoc. Press*, 162 F.3d 503, 506 (7th Cir. 1998); *B.H. by Pierce v. Murphy*, 984 F.2d 196, 199-200 (7th Cir. 1993). However, that rule presupposes that the would-be appellant was never a party to the action at all. We hold that a party to an action in a district court has standing to appeal a judgment or order by which it is actually aggrieved even though that litigant was not a party to the claim addressed by the judgment or order, despite the denial of a motion to intervene in the clam, as long as the appellant was treated as a *de facto* party to that claim in the lower court.

Because the City meets these requirements, we conclude that it has standing to appeal the district court's judgment in this case.

### III.

When a district court upholds on summary judgment an administrative agency's final decision under the Administrative Procedure Act, this court "review[s] the district court's summary judgment decision de novo, while reviewing the agency's decision under the arbitrary and capricious standard." *Coalition for Government Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 457 (6th Cir. 2004) (citing *Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997)). An agency's decision is "arbitrary and capricious" when

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicles Mfrs. Assoc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action is "not in accordance with the law" when it is in conflict with the language of the statute

relied upon by the agency. *See* 5 U.S.C. § 706(2)(A); *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Holland v. Nat'l Mining Assoc.*, 309 F.3d 808, 815 (D.C. Cir. 2002).

A.

The City first argues that the district court erred by failing to recognize that the limitations imposed by 23 U.S.C. § 112 address only bidding procedures and do not reach the substantive bid requirements. The City contends, therefore, that the FHWA could not withhold funds based on a belief that the Lewis Law's local hiring preference was anti-competitive because the Lewis Law itself was not illegal and it did not affect the bidding process. The statute reads:

> (a) In all cases where the construction is to be performed by the State transportation department or under its supervision, a request for submission of bids shall be made by advertisement unless some other method is approved by the Secretary. The Secretary shall require such plans and specifications and such methods of bidding as shall be effective in securing competition.

> (b) Bidding requirements.--
> (1) In general.-- Subject to paragraphs (2) and (3), construction of each project, subject to the provisions of subsection (a) of this section, shall be performed by contract awarded by competitive bidding, unless the State transportation department demonstrates, to the satisfaction of the Secretary, that some other method is more cost effective or that an emergency exists. Contracts for the construction of each project shall be awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility. No requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project, or to the Secretary's concurrence in the award of a contract to such bidder, unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications.

23 U.S.C. § 112(a)-(b).

The City points to the language in subsection 112(a) referring separately to "plans and specifications" and "methods of bidding" as evidence of a distinction between the substantive and procedural components of the agency's discretionary authority. The City argues that subsection 112(b) builds upon this distinction by erecting a framework that favors competitive bidding as the *process* for awarding contracts but does not authorize the federal agency to regulate the *substantive* obligations imposed upon successful bidders, except for the requirements that mandatory contract obligations must be "set forth in the advertised specifications" and be "otherwise lawful." The City believes that the district court erred by relying on the general statutory purposes of promoting competition and ensuring the efficient use of federal dollars as justification under subsection 112(b) for allowing the FHWA to examine the substantive contract requirements and assess whether they are sufficiently "competitive." Rather, the City argues, the FHWA does not have discretion to regulate specific contract terms and specifications that are "otherwise lawful," and the hiring preferences set forth in the Lewis Law satisfy that condition because they do not limit the field to one bidder. Otherwise, a host of requirements that might make local construction projects more expensive – such as insurance requirements, time of the essence clauses, and liquidated damages provisions – could be used to support findings that a contract specification was anti-competitive and justify withdrawal of federal funds.

The FHWA insists that concurrence in a contract is a discretionary, not ministerial, function, and therefore section 112 confers broad discretion to determine which plans, specifications, and

methods of biding will be effective in securing competition. The FHWA takes the position that the overall intent of section 112 is to ensure the efficient use of federal dollars, and section 112(b) serves to effectuate this intent. As a consequence, it insists, any contractual mandate that disadvantages a class of otherwise competent bidders undermines the competitive bidding process and therefore is prohibited under section 112(b) absent a showing that the mandate enhances the cost-effective use of federal funds. The Lewis Law falls short of that measure. Even if the Lewis Law is not illegal *per se*, the FHWA does not believe it falls within the "otherwise lawful" allowance because that language countenances only narrowly tailored socioeconomic programs that Congress has specifically directed. In other words, the FHWA contends that in order to be "otherwise lawful," a contract requirement or obligation must be rooted in federal statute. Therefore, some hiring preferences may be allowable (such as employment preference for Indians on projects near reservations, 23 U.S.C. § 140(d), local employment and materials preferences for highway construction in Appalachia, 40 U.S.C. § 14501(d), and contracting goals for "Disadvantaged Business Enterprises," Pub. L. 105-178, § 1101(b)(1), 112 Stat. 107, 113) but others, such as the Lewis Law, are not.

Since the FHWA reads subsection 112(b) as authorizing its examination of substantive bid specifications to determine whether they inhibit competition, we must accord the agency's interpretation a degree of deference. *Chevron*, 467 U.S. at 843. As the Supreme Court has stated, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Ibid.* However, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. "The Supreme Court has explained that '[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear legislative intent.'" *Battle Creek Health System v. Leavitt*, 498 F.3d 401, 408 (6th Cir. 2007) (quoting *Chevron*, 467 U.S. at 843 n.9).

In determining the meaning of section 112, we must first consider the overall purpose of the Federal-Aid Highway Act as set forth in 23 U.S.C. § 101 and its other provisions. *See Richards v. United States*, 369 U.S. 1, 11 (1962) (deeming it "fundamental that a section of a statute should not be read in isolation from the context of the whole Act"). In passing the Act, Congress meant to "accelerate the construction of the Federal-aid highway systems . . . to meet the needs of local and interstate commerce, for the national and civil defense." 23 U.S.C. § 101(b); *Citizens Organized to Defend Environ. v. Volpe*, 353 F. Supp. 520, 526, 530-31 (S.D. Ohio 1972). Additionally, Congress intended to promote highway safety, 23 U.S.C. §§ 101(a), 105(f), 109(a), (d), (e), (f), 116, conformity to the particular needs of each locality, 23 U.S.C. § 109(a), the creation of an efficient transportation network, 23 U.S.C. §§ 101(b), 103(b)(2)(D)-(E), 105(c), 109(b), the provision of direct and convenient access to public facilities, 23 U.S.C. § 103(b)(1)(A), and the economical use of federal funds, 23 U.S.C. §§ 101(e), 108(a), 109(a), 112. *Citizens*, 353 F. Supp. at 526 n.9. The importance of this last purpose is beyond dispute. *See State Highway Comm'n of Missouri v. Volpe*, 479 F.2d 1099, 1112-14 (8th Cir. 1973); *Centralia Plaza Dev. Corp. v. Topel*, 622 F. Supp. 839, 839-40 (S.D. Ill. 1985); *Citizens*, 353 F. Supp. at 531 ("Economical use of public funds for highway construction is one of the express interests recognized by the Highway Act.").

The presumption in favor of the competitive bidding process reflected in section 112 furthers Congress's aim to ensure the cost-effective use of federal dollars. Competitive bidding, frequently required in the letting of public contracts, is employed to prevent fraud and favoritism and to reward the most efficient bidder. *See Allis-Chalmers Corp., Hyrdo-Turbine Div. v. Friedkin*, 635 F.2d 248, 253 (3d Cir. 1980) (explaining, in the context of a contract for the construction of a hydroelectric power plant, that "[g]overnment contracts are awarded under a competitive bidding process to reward the most cost efficient manufacture and thereby save public funds").

After considering the legislative purpose, structure, and plain meaning of the statutory text, we must conclude that the discretion afforded the FHWA to accept or reject specific contract terms is neither as broad as the agency contends nor as limited as the City maintains. We believe that the City is correct in its assertion that subsection 112(b) draws a distinction between bidding "methods" and "requirements," but incorrect in its contention that this subsection mandates that the FHWA approve any substantive requirement that is "otherwise lawful" and "set forth in the advertised specifications." The former conclusion is required by the statute's plain language, and the latter is a necessary corollary to the broad discretion invested in the FHWA to approve contracts involving the expenditure of federal highway funds.

There is no dispute by the parties that subsection 112(a) gives the FHWA the authority to review "plans and specifications" with an eye toward "securing competition" within the public bidding process. However, subsection 112(b) specifically addresses itself to "bidding requirements." It draws a distinction between bidding procedures and substantive contract requirements, stating that "construction of each project . . . shall be performed by contract awarded by competitive bidding, unless the State transportation department demonstrates, to the satisfaction of the Secretary, that *some other method* is more cost effective or that an emergency exists." 23 U.S.C. § 112(b)(1) (emphasis added). A "method" is defined as "a means or manner of procedure, especially a regular and systematic way of accomplishing something." The American Heritage Dictionary of the English Language (Houghton Mifflin Co. 2004). Plainly, this clause deals *only* with the process of how bids are awarded – competitive bidding or "some other method" – not the substance of the underlying contracts themselves. The clause establishes a strong presumption in favor of competitive bidding as the "method" of choice, and provides that a different "method" can only be employed when the State has demonstrated, to the satisfaction of the FHWA, that the alternative "method" is more cost effective or necessary due to an emergency. Examples of other "methods" would include a sole source award or "best value" procurement that might result in awarding a contract to someone other than the lowest bidder.

After setting forth the presumption in favor of competitive bidding as the method for awarding contracts, subsection 112(b)(1) then proceeds to deal with the *substantive* requirements contained in contract specifications: "No requirement or obligation shall be imposed as a condition precedent to the award of a contract . . . unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications." A "requirement" is "something obligatory; a prerequisite." The American Heritage Dictionary of the English Language (Houghton Mifflin Co. 2004). Much the same, an "obligation" is "a social, legal, or moral requirement, such as a duty, contract, or promise that compels one to follow or avoid a particular course of action." The American Heritage Dictionary of the English Language (Houghton Mifflin Co. 2004). Although Congress could have used more precise language, it is clear enough that this clause deals with substantive requirements or obligations imposed upon contractors who successfully bid on a project. Such substantive requirements or obligations are "condition[s] precedent to the award of a contract" because, if a contractor does not agree to comply with them, the award presumably will go to another. We find it abundantly clear that the public body awarding the contract need not justify these "requirements or obligations" as "more cost effective" than competitive bidding or necessitated by emergency because those conditions only apply when the body awarding the contract seeks to depart from competitive bidding as the *method* for awarding a contract. We must therefore reject the FHWA's interpretation and the district court's conclusion to the contrary, which is in conflict with the plain language of the statute.

Subsection 112(b) by itself confers no authority upon the FHWA to evaluate substantive contract requirements to determine whether they might inhibit competition or disqualify otherwise qualified bidders. But the fact that section 112(b)(1) draws a distinction between bidding "methods" and contract "requirements" does not compel the conclusion that any requirement or obligation must receive the blessing of the FHWA as long as it is "otherwise lawful" and "specifically set forth in

the advertised specifications." Rather, the "otherwise lawful" language establishes a necessary but not sufficient condition for approval of contract specifications: unless the contract requirement is "otherwise lawful" and properly advertised, it *cannot* be applied in the context of a federally-funded project. It does not follow, however, that if a bid specification is lawful, the FHWA must accept it and approve funding.

Consistent with other provisions in the Act, subsection 112(d) requires "the prior concurrence of the Secretary" before a local governmental unit may enter into any contract awarded by competitive bidding. That proviso has been interpreted by the Third Circuit to confer broad discretion upon the FHWA in deciding whether to approve contracts. *Glasgow, Inc. v. Fed. Highway Admin.*, 843 F.2d 130 (3d Cir. 1988). In that case, the court stated:

> There are several reasons why we conclude that 23 U.S.C. § 112 accords the FHWA discretion in determining whether to concur in a contract award. But we must say preliminarily in this regard that it would be astounding to find that Congress has limited the FHWA's function in a situation involving the expenditure of tens of millions of federal tax dollars to that of rubber-stamping a contract award decision by a state agency.
>
> In any event, there is nothing in 23 U.S.C. § 112(d) which suggests that "the prior concurrence" of the FHWA to an award of a contract must be given merely upon the presentation of documents. The Act, in general, indicates that the FHWA is to have discretion in its administration. Thus 23 U.S.C. § 105(a) reads in pertinent part: "The Secretary [of Transportation] *may* approve a program in whole or in part, but he shall not approve any project in a proposed program which is not located upon an approved Federal-aid system." (Emphasis added.) Similarly, 23 U.S.C. § 106(a) provides that the Secretary exercises his approval on the basis of "surveys, plans, specifications, and estimates . . . as the Secretary *may* require." (Emphasis added.) Further, it is clear that the FHWA must have discretion in setting standards for proposed projects. 23 U.S.C. § 109. In addition, 23 C.F.R. § 635.111(d) (1987) provides that if a state highway agency proposes to reject a low bid due to an irregularity it must, with certain exceptions, submit justification for non-waiver of these requirements to enable the division administrator to evaluate the refusal to accept the low bid. If the division administrator determines that the justification is insufficient, he may withhold concurrence to the award of the contract to another bidder at the same letting. Obviously, there is discretion in such a determination.
>
> . . .
>
> Thus the FHWA determines whether to concur in the award of a contract on a case by case basis upon consideration of relevant laws, regulations and policy considerations. This view accords with our view of Congressional intent gleaned from the statute as a whole.

*Glasgow*, 843 F.2d at 136-37 (footnote omitted).

We agree with our sister circuit's rationale. Although the FHWA may not act "for reasons totally collateral and remote to the Act itself," *Missouri*, 479 F.2d at 1114, Congress has conferred upon the Secretary of Transportation, and through her the FHWA, discretionary authority to effectuate the Act's purposes. Just as the FHWA engages in a discretionary rather than ministerial function in determining whether to concur in a contract award, *Glasgow*, 843 F.2d at 136-37, the FHWA likewise enjoys the discretion under subsections 112(a) and (b) to decide whether to approve

a contract requirement that is "otherwise lawful" and "specifically set forth in the advertised specifications," 23 U.S.C. § 112(b)(1), as consistent with the overall goals set forth in the Act.

The district court held that the FHWA properly withdrew federal funds from the Kinsman Road enhancement project because "the City failed . . . to demonstrate to the Secretary's satisfaction that [inclusion of the Lewis Law's requirements in the contract with the low bidder] is more 'cost effective' than competitive bidding or that an emergency existed." J.A. at 139. The district court reasoned that "because the Lewis Law may operate to prevent contractors from placing bids due to hiring requirements and related penalties, the actual bid selection process may not be competitive." J.A. at 140. That holding confounds the FHWA's limited role in enforcing the competitive bidding *process* with its broader discretion to decide whether to award federal funds based on a host of other considerations that focus on policy and efficiency. We therefore must reject the district court's reasoning.

However, it is clear from the record that the City included the Lewis Law requirement in the contract awarded to Perk, even after the City withdrew the reference to the Lewis Law from the bid specifications at the behest of the LPA Coordinator for ODOT. By making the substantive local hiring preference part of the contract with Perk, the City violated the part of subsection 112(b)(1) that states "No requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project . . . unless such requirement or obligation . . . is specifically set forth in the advertised specifications." The FHWA was well within its authority in refusing to countenance the City's attempt to seek forgiveness when it previously could not obtain permission. Since compliance with the Lewis Law was not part of the formal bid specifications presented to competing contractors, the FHWA's decision to withdraw federal funds from the Kinsman Road project when it saw that prerequisite in the final contract was justified under 23 U.S.C. § 112(b)(1) and therefore was not arbitrary, capricious, or contrary to law.

B.

The City also contends that the Lewis Law's requirements do not conflict with the federal regulations upon which the FHWA relied to justify its withdrawal of federal funds. The FHWA supported its decision to withdraw funding by reference to 23 C.F.R § 635.110(b), which prohibits contract requirements for bonds and other features that might restrict competition; 23 C.F.R § 635.112(d), which renders inapplicable to federal-aid projects bidding procedures that discriminate, *inter alia*, on the basis of national, state, or local boundaries; and 635.117(b), which bars contract requirements that discriminate against labor from other states or territories. The City argues in the alternative that if the local hiring preferences do run afoul of these regulations, then the regulations conflict with the plain language of 23 U.S.C. § 112(b).

Congress has delegated to the Secretary of Transportation the authority "to prescribe and promulgate all needful rules and regulations for carrying out the provisions" of the Act. 23 U.S.C. § 315. "Where Congress has left gaps in legislation to be filled in by an administrative agency, the regulations promulgated pursuant thereto are accorded deference." *Nichols v. United States*, 260 F.3d 637, 644 (6th Cir. 2001) (citing *Chevron*, 467 U.S. at 844). Congress may either implicitly or explicitly delegate rule-making authority to an administrative agency. *Nichols*, 260 F.3d at 644 (citing *Chevron*, 467 U.S. at 843). When the delegation is explicit, as here, the agency's regulations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

In addition, an agency's interpretation of its own ambiguous regulations is entitled to deference. *Beck v. City of Cleveland*, 390 F.3d 912, 919 (6th Cir. 2004) (citing *Auer v. Robbins*, 519 U.S. 452, 462 (1997)). However, "[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of

which lack the force of law – do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). *See also Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust Dated June 27, 2002*, 410 F.3d 304, 319 (6th Cir. 2005) (holding that an "agency's letter is not entitled to judicial deference. The letter does not appear to be a product of the agency's rule-making authority, and therefore was likely not subject to the rigors of the public notice-and-comment process") (citing *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001)). When a regulation's meaning is clear, the agency is bound by its terms and may not, "under the guise of interpreting a regulation, . . . create *de facto* a new regulation." *Christensen*, 529 U.S. at 588. Nonetheless, an agency's interpretations of its own rules are entitled to deference "as long as they are reasonable, are clear, and are clearly applicable in this case." *Littriello v. United States*, 484 F.3d 372, 377 (6th Cir. 2007); *Ammex, Inc. v. United States*, 367 F.3d 530, 535 n.2 (6th Cir. 2004) (stating that reasonable agency interpretations carry at least some added persuasive force when *Chevron* deference is inapplicable).

1.

The district court held that the Lewis Law trenched upon the regulation governing bonding provisions because of the penalty that the Lewis Law imposed on contractors who violate the local hiring preference requirement. Under that provision, noncompliance could result in the obligation to furnish a bond of twenty percent of the price of any subsequent contract awarded by the City. The particular regulation reads:

> No procedure or requirement for bonding, insurance, prequalification, qualification, or licensing of contractors shall be approved which, in the judgment of the Division Administrator [of the FHWA], may operate to restrict competition, to prevent submission of a bid by, or to prohibit the consideration of a bid submitted by, any responsible contractor, whether resident or nonresident of the State wherein the work is to be performed.

23 C.F.R. § 635.110(b). The district court reasoned that the Lewis Law's bond penalty provision violates this section because it may discourage bid submissions by contractors who question their ability to comply with the local hiring requirement. The court also determined that the local hiring preference itself discouraged competition by favoring contractors who have knowledge of the local labor market over those who might be required to incur the expense of acquiring such knowledge.

The City contends this regulation does not prohibit the Lewis Law's bond penalty provision because that provision only takes affect *after* a contractor fails to meet the local hiring requirement and the penalty only applies to *future* contracts accepted by the defaulting contractor. According to the City, section 110(b) only regulates conditions precedent.

We disagree with the district court's conclusion that section 110(b) addresses local hiring preference requirements, and therefore we must reject the rationale that the Lewis Law violates section 110(b) by giving local contractors an edge over bidders who are unfamiliar with the local labor market. The Lewis Law's requirement that a fixed percentage of hours must be worked by Cleveland residents is not a requirement for "bonding, insurance, prequalification, qualification, or licensing of contractors." However, we agree with the district court's second determination that the FHWA reasonably concluded that the bond penalty provision violated section 110(b). To be sure, the bond penalty provision likely would not deter any contractor, even one who had no intentions of complying with the local hiring requirement, from initially submitting a bid to the City. Because the bond penalty provision only applies to contracts performed *after* the contractor defaults on its first contract with the City, it does not serve as a disincentive to contractors bidding on their first contract with the City under the Lewis Law regime. Nonetheless, the bond penalty provision certainly could discourage contractors who had once defaulted from submitting subsequent bids

because they uniquely would be required to provide a twenty percent bond.  Under that scenario, the Lewis Law's bond requirement would operate to restrict competition and thereby run afoul of section 635.110(b).  That interpretation of the regulation is reasonable, and therefore the FHWA's application of the regulation to support its withdrawal of federal funds from the project was not arbitrary, capricious, or contrary to law.

2.

The FHWA also maintains that the Lewis Law violates 23 C.F.R § 635.112(d), which states:

> Nondiscriminatory bidding procedures shall be afforded to all qualified bidders regardless of National, State or local boundaries and without regard to race, color, religion, sex, national origin, age, or handicap.  If any provisions of State laws, specifications, regulations, or policies may operate in any manner contrary to Federal requirements, including title VI of the Civil Rights Act of 1964, to prevent submission of a bid, or prohibit consideration of a bid submitted by any responsible bidder appropriately qualified in accordance with § 635.110, such provisions shall not be applicable to Federal-aid projects.  Where such nonapplicable provisions exist, notices of advertising, specifications, special provisions or other governing documents shall include a positive statement to advise prospective bidders of those provisions that are not applicable.

23 C.F.R. § 635.112(d).  The district court rejected that argument and held that the regulation deals only with bidding procedures, not the consequences of substantive bid or contract specifications, and the Lewis Law does not address bidding procedures.  The FHWA argues this conclusion is erroneous; it urges this court to find that the Lewis Law contravenes this regulation because it could discourage responsible bidders from competing for business with the City when faced with the local hiring mandate.

We agree with the district court's interpretation of this regulation.  By its own terms, the first sentence of the regulation deals only with bidding procedures, and the Lewis Law's local hiring requirement is not such a procedure.  Although the FHWA has failed to cite any agency documents or other authority in support of its interpretation, one of the memoranda cited by the FHWA in connection with section 635.117(b) (addressed below) does briefly discuss section 635.112(d).  However, the FHWA cannot claim deferential treatment by reference to agency memoranda or letters citing this portion of the regulation as authority for the position that local hiring preferences are illegitimate.  Such documents are only entitled to deference to the extent they are persuasive, and the letter submitted by the FHWA citing section 635.112(d) is not persuasive: it simply quotes the first sentence of that regulation without any analysis whatsoever.

The applicability of the regulation's second sentence, on the other hand, is a different matter.  That sentence reads: "If any . . . specifications . . . may operate in any manner contrary to Federal requirements . . . to prevent submission of a bid, or prohibit consideration of a bid submitted by any responsible bidder . . . such provisions shall not be applicable to Federal-aid projects."  23 C.F.R. § 635.112(d).  Although these words follow a sentence that deals only with bidding "procedures," they seem to encompass both procedural *and* substantive requirements since they speak to "*any provisions* of State laws, specifications, regulations, or policies."  Nevertheless, we do not believe the FHWA can base its rejection of the Lewis Law's local hiring requirement on this language because, as we explain below, the FHWA has not demonstrated the local hiring requirement is "contrary to Federal requirements."  Although the FHWA has discretionary authority to decline to approve contracts that may not reflect the efficient use of federal dollars, the FHWA has not demonstrated that local hiring preferences styled in the manner of the Lewis Law are impermissible *per se* due to their conflict with federal law.

3.

The district court also accepted the FHWA's argument that the Lewis Law's local hiring preference requirement violated 23 C.F.R. § 635.117(b), which simply states: "No procedures or requirement shall be imposed by any State which will operate to discriminate against the employment of labor from any other State, possession or territory of the United States, in the construction of a Federal-aid project." The City contends this regulation cannot justify the FHWA's withdrawal of funds because the regulation does not prohibit local hiring preferences that discriminate on an intrastate basis only, and the Lewis Law affects only contractors who hire Ohio workers. The district court held that did not matter, since any discrimination, whether interstate or intrastate, can restrict competition.

The FHWA advances that argument in this court, asserting that even though the regulation does not expressly cover intrastate discrimination based on residency, the policy underlying the regulation is equally applicable to intrastate discrimination. In support, the FHWA cites a series of agency memoranda and a participant guidance manual that contain a gloss on the statutes and regulations, all of which circle back to the idea that local hiring preferences violate the competitive bidding requirements of 23 U.S.C. § 112.

The first memorandum was authored by the agency's Chief Counsel on April 30, 1994 and informed the director of the Department of Transportation's civil rights office that local hiring preferences "tend to undermine the competitive bidding process" because "[t]he exclusion of nonlocal labor forces is noncompetitive and may increase the cost of the project." JA at 308-09. The second memorandum cited by the FHWA was written by the FHWA Infrastructure Program Manager to the Montana Division Administrator on February 8, 1999, and explained that the regulations would not permit proposed state legislation that would have restricted Canadian contractors from bidding on federal-aid highway projects in Montana. The memorandum's author noted that the agency's regulations were based on the competitive bidding requirements in the statute, and the agency has applied the regulations consistently throughout the 1990s to discourage the requirement of local hiring preferences by federal aid recipients. The third document is an opinion by the FHWA's acting chief counsel addressing local hiring preferences for the Alameda Corridor Project, in which the author concluded that he did not believe the agency had the authority to waive the prohibition "in the absence of an explicit statutory exemption by Congress." JA at 304. The last document submitted by the FHWA is a copy of the "Contract Administration Core Curriculum Participant's Manual and Reference Guide 2001." JA at 200-02. In relevant part, the manual states that "STAs [State Transportation Agencies] may not include in a Federal-aid contract any provisions that require a contractor to give any preference in hiring. While the STAs (or local governments) are precluded from enacting such preference requirements, this requirement does not apply to the Federal Government." JA at 202.

We do not believe that the foregoing amounts to persuasive authority that 23 C.F.R. § 635.117(b) prohibits the local hiring preference contemplated by the Lewis Law. Cleveland's ordinance was drafted to avoid reaching contractors who hire only out-of-state workers, so it does not "discriminate against the employment of labor from [another] state." 23 C.F.R. § 635.117(b). The plain text of the regulation certainly prohibits much geographically-based discrimination, but it does not prohibit *all* such discrimination. Conspicuously absent from the list "State, possession or territory," is the phrase "or political subdivision," the word "locality," and any other such term that would express an intent to proscribe intrastate discrimination. Although the canon *expressio unius est exclusio alterius* "has force only when the items expressed are members of 'an associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence," *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003), the language in subsection 117(b) fits the bill quite neatly.

The inference therefore is unavoidable that the Secretary of Transportation deliberately omitted in the regulation reference to cities or regions when it expressly listed "State[s], possession[s] or territor[ies]" and nothing else. 23 C.F.R. § 635.117(b). That inference is bolstered by *White v. Mass. Council of Const. Employers*, 460 U.S. 204 (1983), in which the Supreme Court held that Boston's local hiring preference did not violate the Commerce Clause because the city was a market participant not a market regulator, and *United Building and Construction Trades Council v. City of Camden*, 465 U.S. 208 (1984), where the Court held that Camden, New Jersey's local hiring preference ordinance could violate the Privileges and Immunities Clause because it disadvantaged both in-state *and* out-of-state residents alike. In the latter case, the Court observed that the in-state residents "have no claim under the Privileges and Immunities Clause." *Id.* at 217 (citing *The Slaughter-House Cases*, 16 Wall. 36, 77 (1872)). Since the jurisprudence acknowledges the distinction between interstate and intrastate discrimination based on residency, and the regulation specifically does not include the latter, reading the regulation as expansively as the FWHA urges would impermissibly "create *de facto* a new regulation" "under the guise of interpreting a regulation." *Christensen*, 529 U.S. at 588.

The Lewis Law does not operate to discriminate against the employment of labor from another State. The Lewis Law mandates contractors to ensure that 20% of the construction hours worked on a project performed by Ohio residents are worked by Cleveland residents. By excluding from the definition of "construction worker hours" all work performed "by non-Ohio residents," Cleveland, Ohio Codified Ordinances § 188.01(c), the City has limited the impact of the Lewis Law to Ohio residents alone. If a contractor wishes to employ any Ohio construction workers, 20% of the hours performed by those Ohio workers must be worked by Cleveland residents. But if a contractor wishes to employ all out-of-state labor, it can do so without employing *any* Cleveland residents. The Lewis Law thus might disadvantage Ohio-based labor. But the Lewis Law has no effect whatsoever on "the employment of labor from any *other* State, possession or territory of the United States." 23 C.F.R. § 635.117(b) (emphasis added). The FHWA's determination that this regulation was violated, therefore, cannot be sustained.

C.

The City next argues that the district court erred in evaluating the applicability of the Common Rule, codified at 49 C.F.R. § 18.36. According to the City, the Common Rule enables States to spend federal funds using the same procurement rules applicable to expenditures of their own funds. Therefore, the City argues, since the State has stipulated that Ohio law does not prohibit application of the Lewis Law to state-funded projects, the Common Rule dictates that the same apply to federally-funded projects.

The district court held that 49 C.F.R. § 18.37, not section 18.36, was the governing regulation. That rule directs States, when administering subgrants of federal funds to its political subdivisions, to "[e]nsure that subgrantees are aware of requirements imposed upon them by Federal statute and regulation." 49 C.F.R. § 18.37(a)(2). Therefore, the district court reasoned, if a subgrantee proceeds in a manner that violates federal law, its grant cannot be saved by the Common Rule. We agree.

The Department of Transportation, like many other federal agencies, has adopted the Common Rule to "establish[] uniform administrative rules for Federal grants and cooperative agreements and subawards to State, local and Indian tribal governments." 49 C.F.R. § 18.1. This general rule of governance implements federalism principles by allowing States to expend and account for grant funds in large part according to their own laws and procedures. *Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Government*, 53 Fed. Reg. 8034, 8034-35 (March 11, 1988). But the Common Rule does not operate to exempt States from complying with federal law simply because they normally do things

differently.   Rather, the Common Rule is a means to fill gaps in procurement and spending administrative procedures where there is no governing federal rule.  This is a sensible policy, since deferring to state practices avoids the need by federal agencies to promulgate their own procedures for States to follow, which often could be duplicative and breed confusion.  The regulations plainly state, however, that  when federal statutes and regulations conflict with state law, federal law prevails.

This point is made clear by 49 C.F.R. § 18.4, which states that the DOT's Common Rule shall "apply to all grants and subgrants to governments, except where inconsistent with Federal statutes or with regulations."  49 C.F.R. § 18.4(a).  As noted above, state agencies that administer subgrants must ensure that subgrantees follow federal procedures.  49 C.F.R. § 18.37.  Therefore, the fact that the Lewis Law is not inconsistent with Ohio law does not automatically clear its procedures for federally-funded projects.  If federal law stands in the way, the Common Rule cannot be used to circumvent that obstacle.  We have found that the City violated 23 U.S.C. § 112(b) when it included the Lewis Law's provisions in the contract to the successful bidder but previously had withdrawn that requirement from the advertised bid specifications, and we have upheld the FHWA's conclusion that the Lewis Law's bond penalty violated 23 C.F.R. § 635.110(b).  The Common Rule must yield to these findings, and it cannot save the funding for the City's Kinsman Road improvement project.

D.

Last, the City contends that the "clear statement rule" laid down in *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981), precludes the FHWA from withdrawing federal funds.  The City posits that the FHWA's regulations violate *Pennhurst* because they did not put the State of Ohio on notice that in accepting federal funds it was also accepting limitations on its right to impose various contract requirements.  The FHWA insists that the City has waived this argument by failing to raise it in the lower court.  Although "[t]he general rule is that an appellate court will not entertain an argument based upon a theory not litigated below," *Hutton v. United States*, 501 F.2d 1055, 1062 (6th Cir. 1974), an exception exists "[w]hen a new argument presents a question of pure law," *United States v. Butler*, 207 F.3d 839, 850 (6th Cir. 2000).   That exception applies here.  The *Pennhurst* argument presents a question of pure law requiring "no new or amplified factual determination," and both parties have had a chance to address the issue.  *See id.* at 849 (internal quotations omitted).

In *Pennhurst*, the Supreme Court held that when Congress "intends to impose a condition on the grant of federal monies, it must do so unambiguously."  451 U.S. at 17.  This rule, known as the *Pennhurst* "clear statement rule," is based on the rationale that legislation enacted under Congress's spending power is in the nature of a contract:

> [I]n return for federal funds, the States agree to comply with federally imposed conditions.  The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract."  There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.

*Ibid.* (citations omitted).  The "crucial inquiry" in this analysis is "whether Congress spoke so clearly that [the court] can fairly say that the State could make an informed choice."  *Id.* at 25.

Applying this rule, the Court in *Pennhurst* overturned a lower court ruling that would have required Pennsylvania to cover the cost of treatment for disabled individuals in "the least restrictive environment" as a condition of receiving federal funds under the Developmentally Disabled Assistance and Bill of Rights Act.  Although the case dealt with the imposition of an affirmative

obligation, the clear statement rule has been applied to negative obligations as well. *See Barnes v. Gorman*, 536 U.S. 181, 186 n.1 (2002) (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999), and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998)); *Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003); *United States v. Miami Univ.*, 294 F.3d 797, 808-09 (6th Cir. 2002). The rule that has emerged is that if Congress wishes to condition funding upon a State's promise to refrain from doing something it would otherwise have the legal right to do, Congress must speak with a clear voice.

It is true that Congress has not prohibited the imposition of local hiring preferences on federally funded highway projects. As discussed above, that limitation has resulted from the agency's interpretation of the statute mandating competitive bidding procedures. Although the legality of local hiring preferences that discriminate against interstate employers has been undermined by the Supreme Court's decision in *United Building and Construction Trades Council v. City of Camden*, discussed earlier, the Lewis Law does not fall within that prohibition, and it is not clear that Congress would condemn it. However, it is clear to us that 23 U.S.C. § 112 fairly apprises States that any contract specification, regardless of its substantive viability under the federal regulations, cannot be "imposed as a condition precedent to the award of a contract . . . unless such requirement or obligation . . . is specifically set forth in the advertised specifications." 23 U.S.C. § 112(b)(1). This statute puts States on notice that substantive contract requirements must be specifically advertised to prospective bidders before they can be incorporated into a federally-funded contract. Moreover, *Pennhurst* does not speak to the discretion federal agencies enjoy in deciding whether to fund construction projects initially. Those decisions may be based upon any lawful factor that the agency deems relevant under its broad power to administer federal programs.

We conclude, therefore, that the FHWA's decision to withdraw federal funds from the Kinsman Road project did not violate *Pennhurst*'s clear statement rule.

IV.

Although we disagree with the district court's reasoning that 23 U.S.C. § 112(b) provides authority for the FHWA to evaluate substantive bid specifications on the basis of their anticompetitive qualities, and we find that Cleveland's local hiring preference ordinance does not violate 23 C.F.R §§ 635.112(d) or 635.117(b), we conclude that the FHWA's decision to withdraw federal funding from the Kinsman Road improvement project was not arbitrary, capricious, or contrary to law. The FHWA reasonably concluded that the City of Cleveland violated 23 U.S.C. § 112(b) when it included the Lewis Law's provisions in the contract to the successful bidder after the City previously had withdrawn that requirement from the advertised bid specifications, and that the Lewis Law's bond penalty violated 23 C.F.R. § 635.110(b).

For these reasons, we **affirm** the judgment of the district court.