NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0226n.06

Nos. 23-3999/4000/4001

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

ROGER DEAN GILLISPIE,

  Plaintiff-Appellee/Cross-Appellant (23-3999/4001),

     v.

MIAMI TOWNSHIP, OHIO,

     Defendant,

MIAMI TOWNSHIP BOARD OF TRUSTEES,

  Intervenor-Appellant/Cross-Appellee (23-3999/4000/4001),

  MATTHEW SCOTT MOORE,

  Defendant-Appellee/Cross-Appellant (23-3999/4000).

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**
May 02, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

</td></tr>
</table>

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Roger Dean Gillispie ("Gillispie") was wrongfully convicted of sexual assault and imprisoned for decades. After his release, he filed this 42 U.S.C. § 1983 action against Defendant Matthew Scott Moore ("Detective Moore") and Miami Township, Ohio ("Miami Township"). The case then proceeded to trial, where the jury found in favor of Gillispie and awarded him $45 million in damages. The district court later determined that Miami Township was liable to indemnify Detective Moore for the full amount of damages. Gillispie, Detective Moore, and Miami Township each appeal portions of the district court's determinations.

For the reasons set forth below, we **AFFIRM** the district court in full.

## I.   BACKGROUND

### A.  Factual History

On August 20, 1988, an individual abducted two sisters, B.W. and C.W., at gunpoint in the parking lot of a Best Products store in Miami Township, Ohio and forced the sisters to perform oral sex on him.  Another woman, S.C., saw news reports about the attack and reported that a similar crime was perpetrated against her two weeks earlier in a different county.

The Miami Township Police Department ("MTPD") began to investigate.  The lead detective on the case was Gary Bailey, who was supervised by Sergeant Steve Fritz.  Detective Bailey proceeded to visit the crime scene, speak with the victims, develop a composite sketch of the alleged perpetrator, and investigate over twenty subjects.  Yet as time passed, "the good leads ran out," and the investigation went cold.

At the time of the attacks, Gillispie was working at General Motors.  He was later fired from the company.  Gillispie's supervisor, Richard Wolfe, then suggested to police that Gillispie was a possible subject.  Wolfe previously worked as an officer at the Miami Township Police Department ("MTPD"), and for this reason, investigating officers took his accusation seriously. After meeting with Wolfe, MTPD Chief Thomas Angel instructed Sergeant Fritz and Detective Bailey to investigate Gillispie.  Sergeant Fritz and Bailey ultimately eliminated Gillispie as a suspect, as they found that Gillispie did not meet the victims' descriptions and had no criminal history.  However, the reports memorializing these findings were never produced to Gillispie's defense counsel at trial.  Bailey and Fritz later left their positions in the MTPD in 1989 and 1990, respectively.

In 1990, Chief Angel placed a new officer, Detective Moore, on the case. Detective Moore then created a photo lineup and worked with the three victims to identify the perpetrator.  All three

identified Gillispie as their attacker. Gillispie's brief identifies numerous alleged flaws in Detective Moore's photo array and later investigation, including: (1) using a photo of Gillispie that was larger and had a different background color from the other photos; (2) using filler photos of police officers with darker skin than Gillispie and whom the victims may have seen at the police station; (3) telling the victims, before showing them the photos, that Detective Moore had identified a possible suspect; (4) pressuring one of the victims by telling her she needed to be 100 percent positive; (5) failing to adequately record and memorialize the identification procedures; (6) telling B.W. and C.W. that they selected the same individual, which may have increased each of the victims' confidence in their selection while testifying at trial; and (7) incorrectly telling B.W. and C.W. before a pretrial hearing that Detective Moore believed that Gillispie had changed his appearance by dyeing and cutting his hair. Gillispie avers that none of this exculpatory evidence was handed over to his defense counsel at trial.

On September 5, 1990, the MTPD arrested Gillispie. Gillispie was convicted at trial in February 1991 but was subsequently granted a new trial. In June 1991, Gillispie was once again convicted, with the jury finding him responsible for the attacks on all three victims. Gillispie was then incarcerated for more than two decades, starting his term of imprisonment on September 5, 1990, and remaining in prison until December 22, 2011. In 2011, the U.S. District Court for the Southern District of Ohio granted Gillispie a writ of habeas corpus, finding that the exculpatory reports produced by Sergeant Fritz and Detective Bailey were never produced to Gillispie's trial counsel. *Gillispie v. Timmerman-Cooper*, 835 F. Supp. 2d 482, 487–88, 509 (S.D. Ohio 2011). An Ohio state court then vacated Gillispie's conviction and ordered a new trial. Subsequently, the Montgomery County Court of Common Pleas dismissed all charges against Gillispie with prejudice in 2017 and later declared him wrongfully imprisoned in 2021.

**B. Procedural History**

On December 13, 2013, Gillispie filed a complaint in the U.S. District Court for the Southern District of Ohio regarding his wrongful imprisonment. He later filed an amended complaint, in which he alleged a series of claims against numerous defendants. Relevant to this appeal are the following claims: (1) a § 1983 claim for unconstitutional suppression of exculpatory material against Detective Moore and Miami Township; (2) a § 1983 claim for unconstitutional suggestive identification against Detective Moore and Miami Township; (3) a § 1983 claim for fabricated evidence against Detective Moore and Miami Township; (4) a § 1983 claim for malicious prosecution against Detective Moore and Miami Township; (5) a § 1983 claim for destruction of exculpatory evidence against Detective Moore and Miami Township; (6) an Ohio state law claim for malicious prosecution against Detective Moore and Miami Township; (7) an Ohio state law claim for infliction of emotional distress against Detective Moore and Miami Township; (8) an Ohio state law claim for spoliation of evidence against Detective Moore and Miami Township; and (9) an Ohio state law claim for indemnification against Miami Township.

Both Detective Moore and Miami Township subsequently moved for summary judgment. The district court granted Detective Moore's motion in part, permitting Gillispie's § 1983 claims to proceed to trial but dismissing the Ohio state law claims for malicious prosecution, infliction of emotional distress, and spoliation of evidence. The district court also dismissed all claims against the Township, dismissing the indemnification claim without prejudice and dismissing the rest of the claims with prejudice. Gillispie then voluntarily dismissed three of his § 1983 claims against Detective Moore (fabricated evidence, malicious prosecution, and destruction of evidence) via two stipulations. Accordingly, the case at trial focused on the two remaining § 1983 claims against Detective Moore: suppression of exculpatory evidence and suggestive identification.

Prior to trial, Miami Township moved to intervene. The district court granted the motion, noting that the Township "is allowed to intervene at trial for the limited purpose of questioning and argument on only the discreet [sic] issues of lack of good faith and scope of employment consistent with Ohio Rev. Code § 2744.07." Intervenor Order, R. 392, Page ID #13693. Miami Township subsequently filed an intervenor complaint, in which it sought a declaratory judgment finding that it did not owe a duty to defend or indemnify Detective Moore. Miami Township specifically argued that "[t]he alleged acts and/or omissions which serve as the basis for the claims against Matthew Scott Moore in the Underlying Action, if proven, were not taken by Matthew Scott Moore in the scope of his employment or official responsibilities" and were also "not taken in good faith." Intervenor Compl., R. 397, Page ID #13763.

The case then proceeded to trial. Moore moved for a directed verdict before closing arguments with respect to the suppression of documents claim, which the district court denied. The jury then returned a verdict in favor of Gillispie on both claims and awarded him $45 million in damages. The jury also answered a set of special interrogatories for each claim, which included the following questions: (1) "was it proven by a preponderance of the evidence that . . . Moore was not acting in good faith?"; (2) "was it proven by a preponderance of the evidence that . . . Moore was acting manifestly outside the scope of his employment or official responsibilities as a police officer with Miami Township?"; and (3) "was it proven by a preponderance of the evidence that . . . Moore was not acting within the scope of his employment or official responsibilities as a police officer with Miami Township?" Verdict, R. 475, Page ID #15564–65. The jury answered "no" to each question. *Id.*

Following trial, Gillispie filed a motion to intervene in Miami Township's declaratory judgment action. The district court denied this motion. Miami Township also filed two motions:

a motion for judgment as a matter of law, or in the alternative, for a new trial; and a motion to alter or amend the judgment, arguing that the $45 million damages award was excessive. The court denied these motions as well.

The district court then proceeded to resolve Miami Township's claim for declaratory judgment. Miami Township provided three broad arguments in its declaratory judgment brief: (1) that the Township did not have indemnify Detective Moore because he "was not acting in good faith or within the scope of his employment or official responsibilities when he knowingly took actions that violated Plaintiff Roger D. Gillispie's constitutional rights;" (2) if the district court found that the Township did have to indemnify Moore, "then, as a matter of law, [Miami Township's] indemnification to Moore is limited to whatever amount Moore pays towards the judgment;" and (3) that the district court should find that Miami Township does not have to indemnify Detective Moore because the Ohio indemnification law, Ohio Rev. Code § 2744.07, violates the Due Process, Equal Protection, and Supremacy Clauses of the United States Constitution. R. 523, Page ID #18207. The district court rejected Miami Township's arguments, finding that the constitutional challenges were not timely raised and that the Township's other arguments failed on the merits. Accordingly, the district court found that Miami Township "owes a duty to defend Moore in connection with Plaintiff Roger Dean Gillispie's claims" and ordered the Township "to indemnify Moore in the full amount of the verdict entered against him." Order, R. 529, Page ID #18294.

All parties now appeal various portions of the district court's determinations.

## II.    DISCUSSION

### A.  Standards of Review

"We review a district court order granting summary judgment under a de novo standard of review, without deference to the decision of the lower court." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014) (citation and quotation marks omitted).  This Court reviews a motion to amend or alter a judgment for abuse of discretion.  *Mich. Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017).  The Court reviews a denial of a motion for a judgment as a matter of law de novo.  *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 256 (6th Cir. 2011).  "We review de novo the district court's denial of a directed verdict." *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 678 (6th Cir. 2000) (emphasis omitted).  "We review a district court's jury instructions for abuse of discretion." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 536 (6th Cir. 2008).  A district court's determination on a declaratory judgment is reviewed de novo. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 762 (6th Cir. 2014).  We also review de novo "a district court's decision to dismiss a matter for untimeliness."  *Children's Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 521 (6th Cir. 2010).

### B.  Analysis

#### 1.  *Monell* Claims

Gillispie appeals in part the district court's summary judgment determination.  Specifically, he argues that his five federal claims against Miami Township, which were premised on *Monell*[1] liability, should not have been dismissed on summary judgment.

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Gillispie specifically argues that Detective Moore violated Gillispie's due process rights, and that Miami Township therefore faces supervisory liability.

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute of a material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 660 (6th Cir. 2020) (cleaned up). "When evaluating a motion for summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion." *Id.*

Under the Supreme Court's *Monell* doctrine, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This means that "a municipality can be liable under § 1983 only where its policies are the 'moving force behind the constitutional violation.'" *Id.* at 389 (quoting *Monell*, 436 U.S. at 694). "Municipal liability must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff; 'respondeat superior or vicarious liability will not attach under § 1983.'" *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) (quoting *Harris*, 489 U.S. at 385). This Court has recognized four means by which a plaintiff may show that the municipality's policies or customs were connected to the constitutional violation: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

Gillispie's brief focuses on two of the means identified by *Jackson*: ratification by an official with final decision-making authority and a policy of inadequate training or supervision. Neither of these theories are availing.

### a. *Ratification by an Official with Final Decision-Making Authority*

Liability under *Monell* "can be established by showing that an official with final decision making authority ratified the illegal actions." *Paterek v. Vill. of Armada*, 801 F.3d 630, 651 (6th Cir. 2015) (cleaned up). However, the Supreme Court has clarified that "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Instead, the official must "be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id*. at 483. There are two means by which an individual can be granted authority to make municipal policy: via "legislative enactment" or delegation "by an official who possesses such authority." *Id.*

Gillispie has failed to show that an official with final decision-making authority ratified Detective Moore's alleged constitutional violations. To maintain his *Monell* claim under a ratification theory, Gillispie must show that a Miami Township official with final decision-making authority specifically approved of Detective Moore's alleged violations. Yet Gillispie provides no evidence to support such an argument. Gillispie avers that (1) the Township stated "that Moore acted consistently with its policies or procedures"; (2) "other witnesses testified Moore acted in compliance with the policies and practices of the Township"; and (3) Detective Moore's "titular supervisor[] confirmed that Moore's decision to administer photo lineups without another officer's review of the arrays was consistent with department policy." Gillispie Br. ECF No. 48, 32.

Essentially, Gillispie argues that Detective Moore followed MTPD policies, which in-and-of-itself is indicative of ratification. But that is not the ratification standard. Instead, Gillispie must show that an official approved of the specific illegal act that Detective Moore committed. *See Wallace v. Coffee Cnty.*, 852 F. App'x 871, 877–78 (6th Cir. 2021) (finding that a ratification theory did not apply where a supervisor did not approve of the specific constitutional violations). Gillispie provides no evidence that anyone approved of the specific alleged violations.

Additionally, Gillispie does not indicate that a specific decision-maker was responsible for the alleged ratification. This Court has held that a ratification theory "requires that [a] plaintiff make allegations against a specific final decisionmaker." *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016). Yet Gillispie does not demonstrate that any one particular individual ratified the conduct at issue. Instead, Gillispie broadly states that Detective Moore followed MTPD policies, with no suggestion that a specific official took part in approving Detective Moore's actions. This is insufficient under this Circuit's precedent. Accordingly, the district court correctly determined that Gillispie's ratification theory was non-viable.

### b. *Inadequate Training or Supervision*

"In order to show that a municipality is liable for a failure to train its employees, a plaintiff must establish that: 1) the [municipality's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the [municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson*, 925 F.3d at 834 (cleaned up). It is "[o]nly when the failure to train amounts to 'deliberate indifference' on behalf of the city toward its inhabitants, however, will failure to train lead to city liability under § 1983." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (quoting *Harris*, 489 U.S. at 388). The Supreme Court has found that deliberate indifference "is a stringent

standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). A plaintiff meets the deliberate indifference standard by showing either:

> (1) prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it or (2) evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.

*Jackson*, 925 F.3d at 836 (citation and internal quotation marks omitted).

Gillispie argues that there is sufficient evidence to demonstrate that Miami Township failed to adequately train or supervise Detective Moore. At the crux of his argument is the contention that Miami Township failed to provide any real policies or procedures to guide and cabin Detective Moore's investigation. Gillispie specifically argues that the Township did not have policies and procedures regarding *Brady* obligations, photo lineups, or basic introductory officer training.

The fault in Gillispie's argument is that it fails to demonstrate deliberate indifference. At most, Gillispie argues that the Township failed "to adopt any standards whatsoever to actually guide the officer; i.e., what procedures MTPD officers should use." Gillispie Br., ECF No. 48, 30. It is true that "[t]his Court has held that evidence pointing to a City's failure to provide *any* training on key duties with direct impact on the constitutional rights of citizens is sufficient to survive summary judgment with a *Monell* failure to train claim." *Gregory*, 444 F.3d at 754. However, it is not accurate to say that there is evidence in this case that Miami Township failed to provide *any* training. The district court highlighted numerous examples of MTPD policies and training efforts, including: (1) that Detective Moore stated in his deposition that he was trained such that at the time of the alleged wrongdoing, he understood that he had to turn over any exculpatory information in his possession and that it was illegal to fabricate evidence or testimony; (2) the MTPD had a

police academy, which Moore attended, that followed the state's suggested curriculum; (3) at the time of the alleged wrongdoing, the Township had written "Photographic Identification General Guidelines" and "Photographic Show-Up Instructions"; (4) a supervisory detective testified that the MTPD had a practice and procedure in place requiring officers to turn over their entire body of work for the case to the prosecutor; and (5) a former MTPD detective testified that the MTPD maintained a set of policies and procedures relating to case investigations and report retentions.

As there is insufficient evidence to demonstrate an absence of any policies on the part of Miami Township, Gillispie must show that Miami Township's actions fall under either of the *Jackson* deliberate indifferent standards. Gillispie must therefore demonstrate that either (1) there were prior instances of unconstitutional conduct by Miami Township employees that put the Township on notice, or (2) there was evidence of a single violation of constitutional rights and Miami Township failed to implement policies in response to this violation. *Jackson*, 925 F.3d at 836. Nowhere does Gillispie touch on these elements. Gillispie does not show that there were either recurring constitutional violations or that there was a single constitutional violation and Miami Township failed to implement post-hoc policies. In fact, Gillispie does not even mention the *Jackson* standard in either his opening or reply brief, despite the district court's application of the standard[2] and Miami Township's extensive discussion of the standard in its reply brief. Furthermore, there does not appear to be any evidence in the record to find that either of the *Jackson* elements apply to this case. Thus, because Plaintiff cannot show any evidence to meet

---

[2] The district court even noted in its summary judgment order that Gillispie failed to address the *Jackson* standard. Summ. J. Order, R. 298, Page ID #10889 ("*To the extent that Gillispie even makes the argument*, the evidence does not support a showing of prior instances of unconstitutional conduct demonstrating that the Township had notice that the training was deficient and likely to cause injury but the Township ignored it." (cleaned up) (emphasis added)).

the deliberate indifference standard under *Jackson*, the district court did not err in finding that Plaintiff could not maintain his *Monell* claims under an inadequate training or supervision theory.

In summary, Gillispie has failed to show that either an official with final decision-making authority approved of the alleged constitutional violations or that Miami Township maintained a policy of inadequate training or supervision. Gillispie has therefore failed to demonstrate that any reasonable jury could find Miami Township liable for a *Monell* supervisory liability claim.

### 2. Miami Township's Motion to Alter or Amend the Judgment

Both Miami Township and Detective Moore appeal the district court's denial of their Rule 59 motion. They specifically seek a reduction in the $45 million in damages, arguing that such an award shocks the conscience.

Rule 59(e) of the Federal Rules of Civil Procedure permits a district court to alter or amend a judgment. "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). If a court seeks to alter or amend a judgment with respect to damages, the court may either reduce the damages or order a new trial. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007). A district court "is sharply limited in its ability to remit a jury verdict." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004). The court can "remit the damages verdict 'only when, after reviewing all the evidence in the light most favorable to the prevailing party, it is convinced that the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the conscience of the court.'" *Corbin v. Steak 'n Shake, Inc.*, 861 F. App'x 639, 645 (6th Cir. 2021) (quoting *Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004)). For this reason, this Circuit has found that a damages award should be

reduced only if it is either: "(1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, or (3) the result of a mistake." *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir. 1996) (cleaned up).

### a. *Standing*

Gillispie argues that Miami Township does not have standing to make its damages-reduction argument. He notes that Miami Township was permitted to intervene in this trial for the "limited purpose of questioning, argument, and submission of proposed jury instructions and interrogatories on the discreet issues of lack of good faith and scope of employment." Gillispie Br., ECF No. 48, 53 (quoting Mot. Intervene, R. 370, Page ID #12697). According to Gillispie, this limited scope did not include the capacity to intervene at trial regarding damages, given that the Township did not make any argument to the jury regarding the amount of damages. (*Id.*). However, Gillispie points to no case law holding that an intervenor may not challenge a damages award that directly impacts the intervenor. In fact, case law in this Circuit suggests the opposite. This Court has held that "a party to an action in a district court has standing to appeal a judgment or order by which it is actually aggrieved." *City of Cleveland v. Ohio*, 508 F.3d 827, 837 (6th Cir. 2007). In this instance, Miami Township is aggrieved by the district court's denial of the 59(e) motion, as the Township is now liable for tens of millions of dollars in damages due to the district court's judgment. There is perhaps no better example of a party aggrieved by a district court's judgment than a party subject to such large damages. Accordingly, Miami Township has standing to make this argument.

### b. *Merits*

Miami Township presents two arguments as to why the district court's denial was in error: (1) there is insufficient evidence to support the damages award, and (2) the damages are excessive. Neither argument is persuasive.

### i. *Sufficiency of the Evidence*

At trial, the jury was instructed that in order to find damages by a preponderance of the evidence, the jury could consider "the mental and emotional aspects of injury, even if they are not easy to measure." Jury Instructions, R. 472, Page ID #15548. The district court further instructed the jury that "[c]ompensatory damages include but are not limited to:" "[t]he physical mental, and emotional pain and suffering Plaintiff has experienced;" "[t]he physical, mental, and emotional pain and suffering Plaintiff is reasonably certain to experience in the future;" "[t]he loss of enjoyment of life Plaintiff has experienced;" and "[t]he loss of enjoyment of life Plaintiff is reasonabl[y] certain to experience in the future." *Id.*

Miami Township argues that the preponderance of the evidence does not support the $45 million damages award. This is because there is "little specific evidence of past, present, or future physical pain or suffering, and no specific evidence that Gillispie is reasonably likely to suffer any loss of enjoyment in the future." Miami Br., ECF No. 36, 30. Miami Township cites to evidence that Gillispie is physically mobile and able to engage in hobbies. Regarding actual damages, the Township argues that there is little evidence that he had $45 million in lost wages due to the time he spent in prison.

There is a critical flaw in this argument. What Miami Township does not address, and which formed the core of the district court's determination, is the fact that Gillispie was forced to spend years of his life unfairly locked in a maximum-security prison, labeled a violent felon, and

deprived of the opportunity to live a normal life. The district court's decision cites pages worth of testimony and evidence at trial describing the kind of loss and pain endured by Gillispie because of his wrongful imprisonment. Among the most noteworthy of that evidence includes: (1) testimony from Gillispie regarding his fellow inmates at his maximum security prison, in which "[s]eventy percent of the people that are there are not going home" and thus "don't care about you or anything else in life," Order, R. 519, Page ID #18155 (quoting Trial Tr., R. 500, Page ID #16663–64); (2) testimony from Gillispie regarding the violence in the prison, in which he saw, among other things, "people beat so bad, the life taken right out of them," "people stabbed with a pencil, broke it off so they can't get it out of them," "a man get hit in the head so hard that his eyeball came out of his eye socket," *id.* (quoting Trial Tr., R. 500, Page ID #16664–65); (3) testimony from Gillispie regarding pain caused by the decades spent away from family; (4) testimony from Gillispie regarding the humiliation felt by having to register as a sex offender; (5) testimony from Gillispie that after he was released on parole after decades in prison, he "had to go check in, go pee in a cup, go get permission to leave the state, for five years," *id.* at Page ID #18157 (quoting Trial Tr., R. 500, Page ID #16700–01); (6) testimony from Gillispie that he was twenty-five years old at the time of his incarceration and was thus unable to ever start a family; and (7) testimony from Gillispie's criminal attorney, who told a number of stories demonstrating the pain felt by Gillispie at never being able to start a family. These pieces of testimony are just a few examples of the long list of evidence presented to the jury regarding the pain and suffering felt by Gillispie.

In considering these examples, it cannot be said that the jury's determination failed to meet the preponderance of the evidence standard. True, Gillispie does not appear to suffer from any physical ailments due to his time in prison, and seems able to undertake hobbies in his post-prison

life. Yet the jury's instructions were broad, as the jury was encouraged to consider emotional and mental pain and suffering, and loss of enjoyment of life. The inability to start a family, the experience of witnessing frequent violence, and the immense reputational damage are all factors that the jury could consider under the district court's instructions. Miami Township has not identified, nor has this Court found, cases finding that a jury may not award very large damages based on these factors. Accordingly, the jury's award of damages was supported by a preponderance of the evidence.

### ii. *The Size of the Damages*

Miami Township next argues that the damages award is so excessive that it shocks the conscience. To support its argument, the Township turns the Court's attention to one district court case, *Wheatt v. City of E. Cleveland*, No. 17-CV-377, 2019 WL 4071646 (N.D. Ohio Aug. 29, 2019), and one out-of-circuit case, *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009).

*Wheatt* concerned a case in which three plaintiffs were wrongfully convicted for murder in 1996. *Wheatt*, 2019 WL 4071646 at *1. The plaintiffs were later granted a new trial in Ohio state court 2015 and subsequently brought suit against the municipal defendant in federal court under § 1983. *Id.* In the federal court trial, the jury awarded $15 million in damages to the plaintiffs, which the district court upheld. *Id.* at *1, *8–10. Miami Township argues that *Wheatt* demonstrates the unconscionability of the damages award in this case: each plaintiff in *Wheatt* received $5 million in damages for two decades of wrongful imprisonment; Gillispie, by contrast, was awarded nine times that figure. In *Limone*, the First Circuit considered a case in which a jury awarded over $100 million in damages to seven wrongfully convicted plaintiffs. *Limone*, 579 F.3d at 83. The district court calculated damages by determining that the "wrongfully imprisoned plaintiffs were entitled to compensation of *at least* $1 million per year of imprisonment." *Id*. at

107. While First Circuit upheld this calculation, it noted in dicta that "the district court's awards are at the outer edge of the universe of permissible awards and survive scrutiny, though barely, only because of the deferential nature of the standard of review and the unique circumstances of the case." *Id.* Miami Township argues that in this case, the annualized cost of Gillispie's term of imprisonment would be $2.5 million—far more than the $1 million that was reluctantly accepted by the First Circuit.

Miami Township's reliance on these cases is unavailing. To begin, this Circuit has emphasized that reliance on comparator cases is often inapposite. In *Champion v. Outlook Nashville, Inc.*, we noted that "[e]ndeavoring to compare awards is difficult and often unfruitful, because the factual circumstances of each case differ so widely and because it places reviewing courts in the position of making awkward assessments of pain and suffering better left to a jury." 380 F.3d at 906 (citing, *inter alia*, *Layne v. Wal-Mart Stores, Inc.*, 24 F. App'x 364, 368 (6th Cir. 2001), *Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 827 (6th Cir. 1980)). It is thus questionable whether this Court should even consider the aforementioned cases.

But even if we were to engage in such a comparator analysis, there are cases that have similarly large damages awards. In *Gilliam v. Allen*, for example, the Fourth Circuit considered a case in which two wrongfully convicted individuals served decades in prison. 62 F.4th 829, 834 (4th Cir. 2023). After a jury trial, the district court awarded $62 million in compensatory damages, $13 million in punitive damages, $36 million in prejudgment interest, and $6.25 million in attorney's fees. *Id.* The Fourth Circuit concluded that the district court abused its discretion in granting the $36 million prejudgment interest award, and also failed to reduce the compensatory damages by $10-to-$11.5 million to account for prior settlements that the plaintiffs had received. *Id.* at 847–50. In all other respects, however, the court upheld the award of damages, thus giving

the plaintiffs and their counsel a total award of over $70 million. *See id.* at 851. That award exceeds the total in this case. And even when the $70 million total is divided in half to account for the two plaintiffs, Gillispie's award is only 29 percent higher. This percentage is diminished even further when *Gilliam*'s $10 million in prior settlements is considered. If the $10 million in prior settlements is counted as part of the total, the award stands at $40 million per plaintiff—meaning that Gillispie's award was only 12.5 percent higher.

Finally, it must be emphasized the degree to which a court's discretion is cabined in remitting damages. We have specifically held that a court "is sharply limited in its ability to remit a jury verdict." *Champion*, 380 F.3d at 905. This is because "juries have broad discretion to set damages amounts." *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 612 (6th Cir. 2016). Juries are free to consider "humiliation, mental suffering and the intangible loss of civil rights" in determining damages in § 1983 cases. *Green v. Francis*, 705 F.2d 846, 850 (6th Cir. 1983). That is precisely what the jury did in this case. It reviewed the reams of evidence describing the long-term pain Gillispie endured throughout his wrongful term of imprisonment, and the long term psychological and familial effects cause by a quarter-century spent behind bars. Because "[o]ne simply cannot quantify the mental and physical pain and suffering such an experience would cause," this Court "cannot conclude that the evidence does not support the awards." *Bickel*, 96 F.3d at 156. Thus, the district court correctly cabined its review of the damages in this case and found that the award was not excessive or shocked the conscience.

In summary, Miami Township has standing to assert its argument regarding the damages award. That argument, however, is unavailing. The award was both supported by a preponderance of the evidence and was not so excessive so as to shock the conscience.

### 3. Miami Township's Motion for Judgment as a Matter of Law

After the conclusion of trial, Miami Township filed a motion for a judgment as a matter of law regarding whether it had to indemnify Detective Moore. Miami Township argued that Detective Moore did not act in good faith and acted outside of his official responsibilities, and as such, the Township could not be held liable for indemnification under Ohio law. The Township thus requested that the district court either set aside the jury's findings regarding Detective Moore's actions or hold a new trial on this issue. The district court denied this motion.

"Judgment as a matter of law is proper where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on that issue,' and where the claim 'cannot under the controlling law be maintained without a favorable finding on that issue.'" *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006) (quoting Fed. R. Civ. P. 50(a)) (cleaned up). In evaluating a Rule 50 motion, courts employ "the same as the inquiry for resolving a motion for summary judgment pursuant to Rule 56." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 794 (6th Cir. 2004) (en banc), *aff'd*, 548 U.S. 53 (2006). This means that "[w]e review all of the evidence in the record in the light most favorable to the nonmoving party and determine whether there was a genuine issue of material fact for the jury." *Id.*

The relevant statute at issue here is Ohio Rev. Code § 2744.07(B). That statute concerns indemnification, and states in relevant part:

> [A] political subdivision shall indemnify and hold harmless an
> employee in the amount of any judgment, other than a judgment for
> punitive or exemplary damages, that is obtained against the
> employee in a state or federal court or as a result of a law of a foreign
> jurisdiction and that is for damages for injury, death, or loss to
> person or property caused by an act or omission in connection with
> a governmental or proprietary function.

Ohio Rev. Code § 2744.07(B)(1). If, however, "the employee was not acting in good faith" or "was not acting within the scope of the employee's employment or official responsibilities," then the political subdivision's duty to indemnify vanishes. *Id.* § 2744.07(B)(2)(a)–(b). At trial, the jury considered whether Miami Township was liable for indemnification under this statute. In its verdict, the jury stated that Miami Township had failed to prove that Detective Moore was not acting in good faith or was acting outside the scope of his employment, thus rendering the Township liable for indemnification. Miami Township argues that this finding is unsupportable by both the evidence presented at trial and controlling law.

### a. *Good Faith*

In its jury instructions, the district court defined good faith as follows:

> For purposes of this issue, one does not act in good faith when his conduct evinces a dishonest purpose, conscious wrongdoing, or the breach of a known duty through some ulterior motive. Bad faith is the opposite of good faith, generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud. Conduct that is reckless may still be in good faith.

Jury Instructions, R. 472, Page ID #15551. This definition finds its support in Ohio case law. *See, e.g.*, *McCormack v. Jefferson Area Loc. Sch. Dist.*, 112 N.E.3d 338, 344 (Ohio Ct. App. 2018) ("[O]ne does not act in good faith when his conduct evinces a dishonest purpose, conscious wrongdoing, or the breach of a known duty through some ulterior motive."); *Strayer v. Barnett*, 94 N.E.3d 156, 164 (Ohio Ct. App. 2017) (noting that an employer is not liable where "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner"); *Buckeye Union Ins. v. New England Ins.*, 720 N.E.2d 495, 499 (Ohio 1999) ("A lack of

good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.") (citation omitted).

There is ample evidence in this case that Detective Moore acted recklessly. In its order denying the motion for judgment as a matter of law, the district court comprehensively listed each major piece of evidence highlighting Detective Moore's reckless actions throughout the investigation and prosecution. With respect to photo identifications, for example, Detective Moore asked C.W. if "any of the persons shown in the photographs resemble the person you saw" after C.W. had already failed to identify Gillispie in the initial photo array. Trial Tr., R. 489, Page ID #15940–41. Regarding suppression of evidence, for example, Detective Moore failed to turn over evidence pertaining to the suggestive aspects of his questioning.

Reckless behavior, however, is not necessarily bad faith. Instead, as Ohio law and the jury instructions make clear, Miami Township was required to prove that Detective Moore engaged in "conscious wrongdoing" to show he acted in bad faith. *See Buckeye Union Ins.*, 720 N.E.2d at 499; Jury Instructions, R. 472, Page ID #15551. In the long list of evidence highlighted by the district court, there does not appear to be any clear statement, testimony, or record clearly showing that Detective Moore knowingly flouted Gillispie's constitutional protections. True, a jury *could* infer from the circumstantial evidence that Detective Moore engaged in a level of willingness. However, a jury could also conclude that Detective Moore's actions were the product of incompetence, not conscious wrongdoing. For example, one of the experts at trial testified that a *well-trained* police officer "would be able to determine whether or not a lineup was knowingly or

unnecessarily suggestive." Trial Tr., R. 493, Page ID #16297–98. The expert emphasized the caveat that the officer needed to be well-trained, suggesting that a poorly trained officer might be unable to recognize when his actions are violating proper practice. It thus appears that there is evidence to suggest that Detective Moore was inept. While an incompetent police officer presents its own risks and concerns, such an individual does not act with the kind of mental culpability required for a showing of bad faith under Ohio law.

Miami Township points to this Court's holding in *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009). That case concerned a § 1983 suit regarding a *Brady* violation. *Id*. at 363–65. Miami Township cites to a particular passage to make its argument, which states:

> It [is] not impl[ied] . . . that the police are entirely shielded from liability unless a defendant shows bad faith. Where the exculpatory value of a piece of evidence is apparent, the police have an *unwavering* constitutional duty to preserve and ultimately disclose that evidence. The failure to fulfill that obligation constitutes a due process violation, regardless of the whether a criminal defendant or § 1983 plaintiff can show that the evidence was destroyed or concealed in bad faith. The reason no *further* showing of animus or bad faith is required is that, where the police have in their possession evidence that they know or should know might be expected to play a significant role in the suspect's defense, the destruction or concealment of that evidence can *never* be done in good faith and in accord with their normal practice.

*Id.* at 388 (cleaned up). According to the Township, this demonstrates that "Moore's acts could not have been taken in good faith (or in accord with the normal practice (official duties) of police officers) as a matter of law." Miami Br., ECF No. 34, 24. This is because *Moldowan*, according to the Township, "holds certain actions can never be done in good faith." *Id*. at 25.

*Moldowan* is unavailing to the Township's argument. Ohio law *requires* a showing of bad faith to be relieved of indemnification liability; in *Moldowan*, by contrast, we explicitly held that bad faith was not required for § 1983 claims. 578 F.3d at 388. The entire point of the above

quotation was to elucidate the reasons why bad faith is not required for § 1983. And as the district court correctly pointed out, the "opinion in *Moldowan* had nothing to do with Ohio Rev. Code § 2744.07 or indemnification or Ohio law whatsoever." Order, R. 519, Page ID #18135. Ohio law has specific standards with respect to the intertwined nature of bad faith and indemnification that has no similar parallel to federal § 1983 doctrine. Thus, applying a case that does not have any connection whatsoever to the specific Ohio law at issue would be improper.

In summary, we cannot say that the jury's determination on good faith was unsupported by the evidence. There is no obvious and direct evidence demonstrating that Detective Moore knowingly violated Gillispie's constitutional protections. While perhaps a reasonable jury could find that Detective Moore acted in bad faith, it is also possible for a reasonable jury to conclude that Detective Moore was simply incompetent. The jury's good faith determination was not therefore unreasonable.

### b. *Outside the Scope of Employment*

With respect to scope of employment, the district court provided the following instruction to the jury:

> Scope of employment means the employee is engaged in an activity that is logically related to the business of the employer. The determination of whether conduct is within the scope of employment necessarily turns on the perception of whether the employee acted, or believed himself to have acted, at least in part, in his employer's interests. However, if an employee's actions are self-serving or have no relationship to the employer's business, then the conduct is manifestly outside the scope of employment. Manifestly is defined as plainly or obviously.

Jury Instructions, R. 472, Page ID #15551. Like the good faith jury instruction, this instruction is also derived from Ohio law. *See, e.g.*, *McCormack*, 112 N.E.3d at 344 ("The determination of whether conduct is within the scope of employment necessarily turns on the fact finder's

perception of whether the employee acted, or believed himself to have acted, at least in part, in his employer's interests." (cleaned up)); *Theobald v. Univ. of Cincinnati*, 857 N.E.2d 573, 577, 580 (Ohio 2006) ("The Revised Code does not define 'scope of employment.' The concept generally denotes an agency relationship in which the agent or employee is engaged in an activity that is logically related to the business of the principal or employer. . . . [I]f an employee's actions are self-serving or have no relationship to the employer's business, then the conduct is manifestly outside the scope of employment." (internal quotation marks omitted)).

Miami Township points to little evidence to show that Detective Moore's actions were taken outside of the scope of his employment. In its brief, the Township provides a lengthy retelling of the reckless actions taken by Detective Moore. The Township then states that this evidence "shows that Moore's actions . . . could not have been done . . . within the scope of his employment or official responsibilities." Miami Br., ECF No. 36, 21. Yet at no point does Miami Township provide evidence that specifically shows that Detective Moore's actions were either self-serving or wholly detached from the business of MTPD. In fact, it is hard to conceive of how any of Detective Moore's wrongdoing was committed out of self-interest or divorced from MTPD business. There is no evidence to suggest that convicting Gillispie would have returned any immediate personal benefit to Detective Moore. Furthermore, all of Detective Moore's alleged wrongdoing occurred during a police investigation, which is definitionally part of the work of the MTPD.

Miami Township again cites to our decision in *Moldowan*. In that case, we held that "the destruction or concealment of that evidence can *never* be done . . . in accord with [the police's] normal practice." *Moldowan*, 578 F.3d at 389 (citation and quotation marks omitted). Yet whether an action is within the normal practice has no bearing on whether an employee was acting out of

self-serving motives or with no connection to his employer's business. This again demonstrates the incompatibility of attempting to draw a parallel between a case dealing with federal § 1983 doctrine and this case: the Ohio law at issue has specific standards that do not parallel federal doctrine, and it is thus inapposite to rely on case law interpreting federal law. Miami Township also cites to a New York Court of Appeals case, *Lemma v. Nassau Cnty. Police Officer Indemnification Bd.*, which also does not address the Ohio law at issue. 105 N.E.3d 1250 (N.Y. 2018). That case does not even discuss the contours of a scope of employment doctrine; in fact, the Court of Appeals specifically found that the doctrine at issue, "discharge of duties," is not always identical to the scope of employment doctrine. *Id*. at 1256.

In summary, the evidence demonstrates that a reasonable jury could conclude that Detective Moore was acting in good faith and that he was acting within the scope of his employment. Thus, the jury was within its discretion to find that Miami Township was required to indemnify Detective Moore pursuant to Ohio Rev. Code § 2744.07(B).

### 4. Detective Moore's Motion for a Directed Verdict

When parties move for a directed verdict under Federal Rule of Civil Procedure 50, they must "speak up at two times if they want the court to resolve the claim as a matter of law." *Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011). First, "[t]hey must move for judgment as a matter of law before the claim goes to the jury," and second, "they must renew the motion (or seek a new trial) after the jury issues its verdict." *Id*. (citing Fed. R. Civ. P. 50(a)–(b)). If a party fails on either of these fronts, this Court is deprived of appellate review. *Id.*

Detective Moore moved for a directed verdict on the suppression and destruction of evidence claims before the commencement of closing arguments. However, it does not appear that

he raised his motion for a second time, as is required under Rule 50(b). Accordingly, Detective Moore has failed to preserve this issue for appellate review.

### 5. Detective Moore's Proposed Jury Instructions

"We will reverse a judgment based on inadequate jury instructions only 'if the instructions, viewed as a whole, were confusing, misleading and prejudicial.'" *Williams v. Eau Claire Pub. Schs.*, 397 F.3d 441, 445 (6th Cir. 2005) (citation omitted). "A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 396 (6th Cir. 2014) (citation omitted).

Prior to the conclusion of trial, Detective Moore submitted proposed jury instructions. With respect to the suggestive identification claim, Detective Moore requested that the district court include the following instruction:

> You are instructed that the following items do not, in and of themselves make a photo array unduly suggestive:
>
> 1. The difference in the background color of the photos;
>
> 2. The differences in the clothing worn by the persons in the photo array;
>
> 3. The fact that the suspect photo has some slight unique aspect to it such as head tilt, difference in head size, face width, head being more or less in the foreground, or some difference in age of persons in the array, provided the person meets the general description of the suspect;
>
> 4. Any alleged inquiry of the victim of whether they could identify the perpetrator from the photo array;
>
> 5. That the eye color of the suspect was more noticeably blue tha[n] the fillers;

6. That time, even years, had passed between the crime and the identification;

These factors are just examples and you are entitled to evaluate the evidence before you. The fundamental question is whether you consider the identifications to be reliable, fair evidence.

Moore Proposed Jury Instructions, R. 413, Page ID #14062 (citations omitted). The district court did not adopt this proposed instruction.

The district court did not abuse its discretion in failing to adopt Detective Moore's proposed instruction. Assuming, *arguendo*, that the proposed instruction is a correct statement of the law[3] and is not substantially covered by the other charges, the omission of this instruction nevertheless did not impair Detective Moore's case theory. Nothing in the district court's instructions prevented Detective Moore from arguing that differences in photo background colors, differences in clothing colors, unique aspects to photos in the array, inquiries from the victim, bluer eye colors, and time passage do not necessarily make a photo array unduly suggestive. In fact, Detective Moore's counsel made these very arguments during closing argument, and nothing in the district court's instructions detracted from that argument.

Detective Moore's proposed jury instruction is, at its core, a laundry list of factors that are helpful to his case. Yet there is no case law in this Circuit holding that a litigant is entitled to such jury instructions merely because they aid his case-in-chief. Furthermore, this Court may only reverse a district court's jury instructions if those instructions "were confusing, misleading and prejudicial." *Williams*, 397 F.3d at 445. There was nothing confusing, misleading, or prejudicial about the district court's instructions. Those instructions clearly articulated the law and provided

---

[3] Gillispie provides strong arguments in his brief as to why these instructions are not necessarily accurate statements of the law. However, we need not reach that point, as the omission of the proposed instructions did not impinge on Detective Moore's theory of the case.

ample opportunity for Detective Moore to poke holes in Gillispie's case theory. Thus, the district court did not err in denying the proposed jury instruction.

### 6. Declaratory Judgment

On November 8, 2023, the district court entered a judgment on Miami Township's declaratory judgment complaint, finding that the Township must indemnify Detective Moore for the full amount of damages. The district court determined that Miami Township was required to indemnify Detective Moore under Ohio Rev. Code § 2744.07(B) because the jury explicitly found in its special interrogatories that Detective Moore had acted in good faith and within the scope of his employment. The court specifically noted that questions of good faith and scope of employment are inherently factual in nature, and the court could "not disregard the conclusions of the jury on issues of fact." Order, R. 529, Page ID #18285–86.

#### a. *Reliance on Jury Determination*

Miami Township argues that the district court erred in following the jury's special interrogatory answers. According to the Township, the jury's findings belied the evidence and controlling law. But as discussed above, the jury's findings were supported by both the evidence and applicable law. Miami Township further argues that if the district court had granted the Township's motion for judgment as a matter of law, the Township could have presented "additional evidence of Moore's conduct not presented at trial regarding the issues of good faith and scope of employment." Miami Br., ECF No. 36, 36. The Township then provides a long list of evidence supporting its theory that Detective Moore acted neither in good faith nor within the scope of his employment. Yet as discussed above, the district court did not err in denying the motion for judgment as a matter of law. Thus, both of Miami Township's arguments fail, as the

district court properly relied on the jury's special interrogatory responses to find that the Township must indemnify Detective Moore.

#### b. *Indemnification in the Full Amount*

Miami Township next argues that it should not be held liable to pay the full amount of the $45 million in damages. The Township states that "it was entitled to a declaration that its indemnification obligation to Moore is limited to reimburse Moore for what Moore can pay towards any final judgment against him." Miami Br., ECF No. 36, 39. According to the Township, this standard should be adopted because the animating principles behind Ohio Rev. Code § 2744.07 did not contemplate the kind of indemnification at issue in this case.

This issue is one of statutory interpretation. We must ask whether Ohio Rev. Code § 2744.07(B) permits Miami Township to indemnify Detective Moore for the full $45 million damages award. To determine the meaning of a statute, "[t]he starting point . . . is the language of the statute itself." *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005) (quoting *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979)). "This inquiry begins—and sometimes ends—with the plain language of the statute. If the language of the statute is clear, the court applies the statute as written." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020) (cleaned up). When examining the specific language of a statue, "words will be interpreted as taking their ordinary, contemporary, common meaning," as "it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" *Plavcak*, 411 F.3d at 660–61 (first citing *Perrin v. United States*, 444 U.S. 37, 42 (1979), then quoting *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985)).

Ohio Rev. Code § 2744.07(B)'s language is plain and clear. The statute states that

> Except as otherwise provided in division (B)(2) of this section, a
> political subdivision shall indemnify and hold harmless an employee

> in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.07(B)(1). The plain text of this provision limits a political subdivision's duty to indemnify in one narrow circumstance—when employees have judgments against them for punitive or exemplary damages. *Id.* § 2744.07(B)(1). In this case, because Gillispie's damages were compensatory only, the limitation in § 2744.07(B)(1) does not apply. And the statute does not make any kind connection between the amount an employee is able to pay and the amount the municipality must indemnify. Reading Miami Township's proposed interpretation of the law would require an impermissible extratextual interpretation of this statute. This lack of textual grounding in the Township's interpretation is fatal to the Township's argument.

The Township turns the Court's attention to *Ayers v. City of Cleveland*, 156 N.E.3d 848 (Ohio 2020). In that case, the Ohio Supreme Court considered whether a judgment creditor could bring a claim under Ohio Rev. Code § 2744.07 against the City of Cleveland. *Id*. at 850–51. The court ultimately determined that only an employee of a political subdivision, and not a judgment creditor, could seek indemnification under the statute. *Id*. at 854. Miami Township specifically highlights the court's finding that "the right of indemnification is personal to the employee" and that "the statute does not provide that a political subdivision shall indemnify any judgment against an employee." *Id*. at 853. The court further noted that "indemnification is a personal right rather than a right that may be enforced by a third party" because "indemnification exists to make whole the person who is indemnified" and "indemnification does not exist to benefit a third party." *Id*. at 853–54 (citation and internal quotation marks omitted). Miami Township argues that this language necessarily leads to the "conclusion that the Township's indemnity obligation to Moore

is limited to the amount Moore pays towards the judgment[, which] is not a stretch or inconsistent with *Ayers*." Miami Br., ECF No. 36, 41.

The Township's interpretation of *Ayers* far exceeds the Ohio Supreme Court's actual holding. *Ayers* in no way contemplated the issue at hand: whether a municipality must indemnify the full amount of the damages against an employee. Each of the *Ayers* quotations cited by the Township are in explicit reference to the question of whether a non-employee, third party can utilize Ohio Rev. Code § 2744.07 to recover. 156 N.E.3d at 853–54. This case thus presents little precedential usefulness for the issue at hand.

Miami Township also argues that permitting full indemnification would frustrate the Ohio Legislature's purpose in passing Ohio Rev. Code § 2744. The Township highlights case law finding that the "manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions." *Summerville v. Forest Park*, 943 N.E.2d 522, 531 (Ohio 2010) (citation omitted). Miami Township appears to use this quote to argue that the Township should not be saddled with the financial burden of paying $45 million to Gillespie on behalf of Moore. Yet that quotation is inapplicable to this case. The language from *Summerville* concerns exceptions under Ohio Rev. Code § 2744 in which a political subdivision is not required to pay. *See id.* It is those exceptions, and not the statute as whole, that the Ohio Supreme Court's language was geared towards. *See id.* In fact, to suggest that the statute exists purely to protect the financial resources of a municipality would contort basic logic. It would be nonsensical for Ohio to pass a law finding that a municipality must financially cover the losses of its employees in court, but also have the underlying goal of protecting the fiscal assets of the municipality.

In summary, a plain reading of Ohio Rev. Code § 2744.07(B) indicates that Miami Township must indemnify Detective Moore for the full amount of damages. Miami Township's

reading of the statute falls well outside the bounds of the law's text and is grounded in an inaccurate reading of Ohio case law.

### c. *Constitutional Challenges*

Miami Township further argues that it does not have to indemnify Detective Moore because the underlying statute is unconstitutional. Specifically, the Township argues that Ohio Rev. Code § 2744.07(B) violates the Due Process, Equal Protection, and Supremacy Clauses of the U.S. Constitution. The district court did not consider the merits of this argument, as the court found that the argument was untimely pursuant to Federal Rule of Civil Procedure 5.1.

Rule 5.1 governs the notice a party must give when it makes a constitutional challenge to a statute. The rule states in relevant part:

> A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
>> (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>>> (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or
>>>
>>> (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>>
>> (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a). After these requirements have been satisfied, the court must then "certify to the appropriate attorney general that a statute has been questioned." Fed. R. Civ. P. 5.1(b).

The district court determined that Miami Township failed to provide timely notice as required under Rule 5.1. It specifically found that the Township had failed to make the constitutional challenge in the initial intervenor complaint; instead, the first time the Township brought this argument was over a year later in the Township's declaratory judgment briefing. The court cited district court case law to hold that "[a] party desiring to question the constitutionality of a state statute at issue in a civil action—as is the case here—should lodge their challenge at the pleading stage of the litigation." Order, R. 529, Page ID #18292–93 (citing *Mockeridge v. Alcona Cnty. ex rel. Bd. of Comm'rs*, 636 F. Supp. 3d 790, 793–94 (E.D. Mich. 2022)). The court further noted that to allow Miami Township to bring this argument "would cause substantial prejudice on Moore and the State of Ohio" because "[h]ere at the eleventh hour of this litigation, neither Moore nor the State of Ohio could reasonably be expected to fully and adequately defend the constitutionality of Ohio Rev. Code § 2744.07." *Id.* at Page ID #18293.

There is an important flaw with the district court's finding. The court cited a district court case to support the proposition that Rule 5.1 notice must be given at the pleadings stage of litigation. However, neither the district court, nor Detective Moore, nor Gillispie point to case law from this Court holding the same. None of our sister circuits appear to take this approach either. Furthermore, this requirement seems to contradict the language of Rule 5.1. Rule 5.1(a) states that notice must be filed where a party makes a constitutional challenge in "a pleading, written motion, or other paper." This language suggests that a party need not just bring a constitutional challenge in a pleading, as they may also bring such challenges in written motions or other papers.

The district court did not err, however, in its finding of prejudice. Although the question of prejudice in the context of Rule 5.1 has not been fully fleshed out by this Circuit or our sister circuits, we have nevertheless spoken broadly on untimely and prejudicial filings. We have largely

found that when a party makes a filing in the late stages of litigation, that filing may be considered prejudicial where it imposes an unfair burden on other parties. *See, e.g.*, *Salem Pointe Cap., LLC v. BEP Rarity Bay, LLC*, 854 F. App'x 688, 699 (6th Cir. 2021) (denying intervention where "extensive litigation . . . has occurred, [so] intervention at this late stage would cause prejudice in the form of undue delay" (cleaned up)); *Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 F. App'x 305, 317–18 (6th Cir. 2016) (finding the addition of new claims late in litigation would prejudice the defendant because it would require reopening discovery); *United Precision Prods. Co. v. Avco Corp.*, 540 F. App'x 489, 497 (6th Cir. 2013) (finding an amendment to a counterclaim three months before trial "is untimely, is prejudicial to the opposing party and would unduly delay the proceedings" (cleaned up)).

In this case, Miami Township raised its constitutional claims on September 21, 2023. That was nearly one year after it filed its intervenor complaint and exactly ten months after the jury returned its verdict. There appears to be little reason why the Township could not have raised these arguments earlier. Furthermore, given how late in litigation the Township made this argument, the district court was correct to find it unreasonable for Detective Moore and the State of Ohio to adequately defend the constitutionality of the statute at issue. The district court rendered its judgment only a month-and-a-half after Miami Township made this argument, meaning that Detective Moore and the State of Ohio had only a small amount of time to prepare arguments for an entirely unforeseen issue that had yet to be litigated in this case.

Miami Township argues that it could not have raised this issue earlier because the issue had not yet become ripe. According to the Township, at the time it filed the intervenor complaint, "it was unknown if the statute would even apply, and the Township argued that it did not apply because Moore was not acting in good faith or within the scope of his employment or official

responsibilities." Miami Br., ECF No. 36, 44. Yet under this logic, the whole intervenor complaint was not ripe. At the time the Township filed its complaint, the trial had yet to commence, and it was therefore "unknown" whether Detective Moore would be held liable and the Township would face possible indemnification. Furthermore, once the jury returned its verdict and specifically indicated in its special interrogatories that Detective Moore acted in good faith and within the scope of his employment, Miami Township was under clear notice that it was almost certain to face indemnification liability under Ohio Rev. Code § 2744.07(B). Nevertheless, the Township proceeded to wait ten months after the verdict to first make its constitutional argument.

In summary, the district court did not err in finding that Miami Township's constitutional challenge was untimely. The district court's determination that a Rule 5.1 notice must be filed in a complaint does not have support in either Sixth Circuit precedent, the precedent of other circuit courts, or the language of Rule 5.1. However, the district court correctly held that allowing this argument to proceed would have unfairly prejudiced both Detective Moore and the State of Ohio. In the course of this lengthy litigation, Miami Township brought this novel challenge to Ohio law at the last hour, and it would have been difficult for Ohio and Detective Moore to provide an adequate defense on such short notice.[4]

---

[4] For similar reasons, we deny the Township's pending motion to certify seven questions—which concern the implementation and constitutionality of Ohio Rev. Code § 2744—to the Ohio Supreme Court. "[C]ertification is disfavored when it is sought only after the district court has entered an adverse judgment." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015). Miami Township did not timely seek certification in district court; indeed, it sought certification with this Court only after the district rendered an adverse judgment against it. We therefore exercise our "sound discretion" and deny the Township's motion. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted).

### III.   CONCLUSION

For the reasons set forth above, this Court **DENIES** Miami Township's motion to certify questions to the Ohio Supreme Court and **AFFIRMS** the judgment of the district court.